ALLEN, EXR., *v.* REGISTER LIFE INS. CO.

(Decided February 9, 1931.)

*Mr. Don P. Mills,* for plaintiff in error.
*Messrs. Cannon, Spieth, Taggart, Spring & Annat,* for defendant in error.

LEVINE, P. J.   This case was tried to the court without the intervention of a jury, and at the conclusion of the evidence the court rendered a judgment in favor of defendant in error.

It will be seen that the parties appear in this court in the same order which they occupied in the common pleas court.

This suit was instituted in the common pleas court by Paul R. Allen, the executor of the estate of Henry Hermelin, upon an insurance policy.   The record discloses that on the 14th day of February, 1927, Henry Hermelin became insured in the Register Life Insurance Company of Davenport, Iowa, and paid the first year's premium for said insurance in the sum of $68.24.   The policy contains the usual provisions, amongst which is the following: "The Com-

pany will accept payment of the annual premiums stated above in semi-annual or quarterly installments, as shown on the filing page of this policy." Last paragraph, page 2, Exhibit A. The filing page provides: "Annual premium $68.24. Due February 14th. Semi-annual installment $35.49. Due February and August 14th. Quarterly installment $18.00. Due February, May, August and November 14th."

The policy also provides that "if any premium or any part or installment of premium thereon shall not be paid when due, this contract and all rights paid thereon without action on the part of the Company shall be terminated immediately," etc.

It will be seen that the due date for the payment of premiums under this policy was the 14th of February of each year. There is contained in the policy the usual provision which gives the assured a period of one month's grace.

On the 13th day of March, 1928, which was about one day before the period of grace expired, the assured, Henry Hermelin, forwarded to the company his check drawn on the Union Trust Company in the amount of $30.17, accompanied by the following memorandum: "I will send the balance in a few days." This check was received by the company on March 15, 1928, which was, as heretofore stated, within the grace period of thirty-one days provided by the policy.

The record discloses that Henry Hermelin had sufficient money in the Union Trust Company to cover the check which he forwarded to the company. Immediately upon receipt of this check the company acknowledged the receipt of same and advised the assured as follows: "We will file this ahead

accordingly and we hope to receive your additional payment at an early date."

On March 30th the company wrote to the assured as follows:

"We are still holding your check of $30.17 in our files awaiting the balance of $33.00 to make up the February annual premium.

"If your policy is to be continued on the annual premium paying basis it will be necessary for you to send in this balance without further delay.

"However, if you only wish to pay semi-annually at this time the net semi-annual premium being $32.96, leaves a balance of $2.79 to be paid to complete this entry.

"Will you kindly send in whichever amount meets with your convenience at this time." Defendant's Exhibit 4.

On April 23d, just prior to the death of the plaintiff's decedent, the company again wrote to the assured:

"We are still holding your check of $30.17 in our files awaiting the balance of $33.00 to make up the annual premium that was due last February on your policy.

"As previously explained, we cannot consider your policy in good standing unless the correct premium payment is received.

"We, therefore, urge you to send in this balance, or enough to make up the semi-annual premium, as outlined in our letter of March 30th without further delay." Defendant's Exhibit 5.

On May 7, Paul R. Allen, an attorney at this Bar, notified defendant company of the death of the insured and that he was the executor under decedent's

will. He also directed the company to apply the check which it was still holding to the payment of a quarterly premium under the policy. In response to this letter the company informed the executor that the failure of the insured to pay the premium due February 14, 1928, and the further failure to pay the balance within thirty-one days after February 14, caused the forfeiture of the policy, and for that reason the company denied any liability under the policy.

Plaintiff, executor of the estate of the insured, brought suit for the recovery of the principal sum, $1,500, payable upon the death of the insured, and after a hearing on the merits the court entered a judgment for the defendant.

In rendering judgment in favor of the defendant company, the trial court held that since the insured by the terms of his letter accompanying the check for $30.17 elected to pay the annual premium, and gave the assurance that the balance would be forwarded within a few days, the company neither had the right nor the duty to cash the check and apply a part of the proceeds to the payment of a quarterly premium; that when the insured sent the company his check for $30.17 he gave specific instructions as to how the same should be applied; and that the company was bound by these instructions. The court further held that part payment was insufficient to prevent the forfeiture and the lapse of the policy.

We gather from the authorities that when an insurance company has in its hands sufficient funds of the insured to pay a premium upon a policy when due, it becomes the duty of the insurer to apply the same so as to prevent a forfeiture of the policy. In

the instant case the insured had the option of paying the premium annually, semiannually, or quarterly. Within the grace period of the policy the insured placed in the hands of the insurer funds more than sufficient to pay the quarterly premium. When the insured forwarded to the insurance company his check in the sum of $30.17, he clearly indicated his intention not to sever relations with the insurance company. He unquestionably intended that the policy should remain in full force and effect.

It is true that the letter accompanying his check contained his promise that he would forward the balance within a few days, which he did not do. The insurance company was under no obligations to wait until this promise had been fulfilled. When the last day of grace arrived, it became the duty of the insurance company to apply part of the funds which the insured placed in its hands to the payment of the quarterly premium, so as to prevent a forfeiture and lapse of the policy. The company chose a different course. It corresponded with the insured and pointed out to him that it would be necessary for him to forward the balance due upon the annual premium, or, if the insured wished only to pay semiannually, that an additional balance of $2.79 would have to be paid by him to complete the payment of the semiannual installment. The company had the right without further correspondence at the expiration of the last day of grace to apply so much of the funds which the insured placed in its hands as was necessary to the payment of the quarterly premium. Had the company chosen that course, the insured could not have been heard to complain that the company failed to follow his instructions. Since the

assured indicated his intention to continue his relations with the company by keeping the policy in force, he thereby became indebted to the insurance company, at least to the payment of the minimum requirement under the policy, to wit, the quarterly installment.

It follows, in our opinion, that since the insurance company had the right and authority to make such application out of the funds placed in its hands it became its duty so to do, so as to prevent a forfeiture and lapse of the policy.

In the case of *Mutual Life Ins. Co.* v. *Breland,* 117 Miss., 479, 78 So., 362, L. R. A., 1918D, 1009, the court held that upon the nonpayment of a premium due on a policy upon which surplus dividends had accrued, sufficient to pay the premium, it is the duty of the insurer to apply such dividends to the payment of the premium so as to prevent a forfeiture.

In the case of *Union Central Life Ins. Co.* v. *Caldwell,* 68 Ark., 505, 58 S. W., 355, 361, the court, after stating the proposition of law which makes it the duty of an insurer to apply funds in its hands belonging to the insured to the payment of an unpaid premium so as to prevent a forfeiture of the policy, sets forth the underlying reason in the following language: "The doctrine does not arise out of the peculiar facts of any particular case. It does not depend upon contract, custom or course of dealing for its existence and potency. It has its origin in that fundamental principle of justice which will compel one who has funds in his hands belonging to another, which may be used, to use such funds, if at all, for the benefit, and not to the injury, of the owner."

We conclude, therefore, that in the instant case the insurance company had the right and authority to apply part of the fund placed in its hands by the insured to the payment of the quarterly premium which fell due at the expiration of the period of grace, to wit, March 14, 1928; that had the company chosen so to do the insured could not have been heard to complain of the action of the company, since he indicated to the company his intention to continue contractual relationships with the company. We also conclude that, since the company had the right and authority to make such application had it chosen so to do, a duty devolved upon it to make such application so as to prevent a forfeiture and lapse of the policy.

We are of opinion, further, that the equitable maxim, ''Equity regards that as done which ought to be done,'' is applicable to this case, and that we may regard this case as if an application out of the funds in the hands of the company had actually been made to the payment of the quarterly premium. It is the duty of the company so to do, and we may regard that which the company ought to have done as having been done.

In view of the foregoing, it follows that the judgment of the common pleas court was erroneous, and that it should therefore be reversed for the reason that it is contrary to law, and for the further reason that it is manifestly against the weight of the evidence.

*Judgment reversed and cause remanded.*

WEYGANDT and VICKERY, JJ., concur.