THE STATE EX REL. STOLL ET AL. *v.* LOGAN
COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. Stoll v. Logan Cty. Bd. of Elections,*
117 Ohio St.3d 76, 2008-Ohio-333.]

(No. 2008–0059—Submitted January 25, 2008—Decided February 5, 2008.)

**Per Curiam.**

{¶ 1} This is an expedited election action for a writ of prohibition to prevent a board of elections and its members from placing a zoning referendum on the March 4, 2008 election ballot in Jefferson Township, Logan County, Ohio. Because the board and its members abused their discretion and clearly disregarded R.C. 519.12(H) by placing the zoning referendum on the ballot, we grant the writ.

{¶ 2} On September 19, 2007, the Jefferson Township Board of Trustees adopted Resolution No. 200741, which is an amendment to the township zoning resolution that establishes guidelines for the siting of wind turbine generator facilities and anemometer towers in the township. A group of citizens opposed to the amendment circulated a petition for a township zoning referendum on the resolution at the March 4, 2008 primary election.

{¶ 3} On October 14, 2007, instead of filing or presenting the referendum petition to the Jefferson Township Board of Trustees, the petitioners delivered the petition to the private residence of Tim Tillman, a Jefferson Township trustee and one of the petition signers. Tillman was aware that the referendum-petition form specified that the petition was "[t]o be filed with the Board of Township Trustees within 30 days after the adoption of the amendment." The petition also included blanks for the township fiscal officer to note when the petition was filed.

{¶ 4} Nevertheless, the petition was never filed with the township fiscal officer or otherwise physically presented to or filed with the board of trustees. Tillman did not request that the petitioners pay any filing fee. Tillman kept the petition at his private residence until October 26, when, upon advice of the board's legal counsel, he delivered the petition to respondent Logan County Board of Elections for filing. The board of trustees never authorized Tillman to deliver the petition to the board of elections. On October 29, Tillman filed a statement with the board of elections acknowledging that he had received the township zoning

referendum petition on October 14 and purporting to verify that "all sets of petitions were signed and dated." Tillman did not specify that he was certifying the petition to the board of elections.

{¶ 5} On October 30, at a regular meeting of the township board of trustees, Roger Brown, together with relator Robert W. Stoll and a group of other township electors interested in obtaining more information about the petition, submitted a request to the board for "copies of all written, recorded, or e-mailed records" from October 1, 2007, to October 30, 2007, pertaining to the wind turbine zoning resolution and any related referendum petition. The agenda for the October 30 meeting did not include any discussion about the referendum petition.

{¶ 6} Meeting minutes reflected the following concerning the request:

{¶ 7} "Discussion was heard regarding the referendum filed with the Township as to specific verbiage, timeline of filing with the Township and the Board of Elections, filing fee and how all relates to Ohio Public Records Law. Mr. Tillman contacted Prosecuting Attorney Heaton regarding the referendum; the Township is permitted to collect a $10.00 filing fee; none has been collected thus far. Mr. Tillman will run copies of requested documentation and forward to Mr. Brown."

{¶ 8} According to the chairman of the board of township trustees, despite the language in the minutes, the petition was never filed with or presented to the board of trustees. Trustee Tillman recalled that at the October 30 meeting, the discussion concerning the referendum was brief and covered his delivering the petition to and filing it with the board of elections and not charging a filing fee. Trustee Tillman's recollection is consistent with that of Stoll and Brown, who specified that the discussion at the meeting included Tillman's indication that he had received a referendum petition regarding Resolution No. 200741 and had delivered it to the board of elections.

{¶ 9} At a November 27, 2007 regular meeting, the board of trustees approved the October 30 meeting minutes. The board of trustees never reviewed or certified the petition at any public meeting.

{¶ 10} According to Trustee Tillman, he assembled the records responsive to the public-records request the day after the October 30 meeting. But neither he nor anyone else contacted Brown. At the board's November 27 meeting, Brown asked for a response to the request, and on November 29, the township fiscal officer provided some of the requested records. The records provided did not include a complete copy of the referendum petition.

{¶ 11} Stoll eventually obtained a complete copy of the petition from the board of elections in early December.

{¶ 12} Stoll then attempted to retain counsel to determine whether there were grounds to protest the petition, but the first attorney contacted declined to

represent relators, 19 township residents opposed to the referendum. On December 17, relators obtained current counsel, and they filed a written protest with the board of elections against the referendum petition on December 26, requesting a hearing at the earliest opportunity. Relators raised several grounds for their protest, including that the petition was never filed with the board of township trustees as required by R.C. 519.12(H) and that the petition was not timely reviewed and certified to the board of elections by the board of township trustees as required by R.C. 519.12(H).

{¶ 13} On January 4, 2008, the board of elections held a hearing on relators' protest. Two of the four members of the board of elections recused themselves because of potential conflicts of interest. The elections board denied the protest and certified the referendum to the ballot for the March 4, 2008 primary election, making the following findings:

{¶ 14} "1. The petition was filed with the township trustees on October 14, 2007. We accept Tim Tillman's explanation of the events.

{¶ 15} "2. The petition was approved and transmitted by the Board through a legally valid meeting:

{¶ 16} "a. On October 17, 2007, Trustee Tillman advised Chairman Paul Blair he had received the petitions.

{¶ 17} "b. Chairman Paul Blair acknowledged that it was his responsibility to call a special meeting of the trustees and failed to do so. He further testified that the certification process was a ministerial act and had no substantive nature.

{¶ 18} "c. Trustee Tillman, upon advice of counsel, transmitted the petitions to the Board of Elections within fourteen (14) days of receipt as required by statute.

{¶ 19} "3. The Jefferson Township Board of Trustees met on October 30, 2007, and discussed the procedures that had been followed in transmitting the petitions to the Board of Elections and ratified, thereby certifying, the petitions.

{¶ 20} "4. The petitions were timely filed to the Board of Elections by delivery on October 26, 2007."

{¶ 21} Five days later, relators filed this expedited election action for a writ of prohibition to prevent respondents, the board of elections and its members, from certifying the referendum petition to the ballot and from submitting the zoning amendment to the electorate. The board and its members filed an answer, and the parties filed evidence and briefs pursuant to the expedited election schedule in S.Ct.Prac.R. X(9).

{¶ 22} This cause is now before the court for our consideration.

## Laches

{¶ 23} The elections board and its members assert that this election case is barred by laches because relators delayed 73 days from the October 14 date that the referendum petition was delivered to Tillman's home to file their protest in the board of elections challenging the petition.

{¶ 24} "We have consistently required relators in election cases to act with the utmost diligence." *Blankenship v. Blackwell*, 103 Ohio St.3d 567, 2004-Ohio-5596, 817 N.E.2d 382, ¶ 19. "If relators do not exercise the required diligence, laches may bar the action for extraordinary relief in an election-related matter." *State ex rel. Choices for South–Western City Schools v. Anthony*, 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 20. "The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections* (1995), 74 Ohio St.3d 143, 145, 656 N.E.2d 1277.

{¶ 25} An unjustified delay in submitting a protest in an election case can result in laches. *Mason City School Dist. v. Warren Cty. Bd. of Elections*, 107 Ohio St.3d 373, 2005-Ohio-5363, 840 N.E.2d 147, ¶ 13–21. Relators, however, did not unreasonably delay in submitting their protest. They justifiably waited until November 29 to receive a response to their public-records request for information concerning the petition. They also reasonably waited until early December for the board of elections to provide a complete copy of the petition after the board of township trustees failed to do so. Further delay until mid-December was reasonably attributable to their attempts to obtain legal counsel. See, e.g., *State ex rel. Brinda v. Lorain Cty. Bd. of Elections*, 115 Ohio St.3d 299, 2007-Ohio-5228, 874 N.E.2d 1205, ¶ 10. After eventually securing their current counsel, they promptly submitted their protest. Notably, even though the issue of laches was raised at the protest hearing, the board of elections did not decide the protest on this basis.

{¶ 26} Moreover, any minimal delay that could be considered reasonably attributable to relators did not prejudice respondents. Respondents do not claim any prejudice to their ability to prepare and defend against relators' claim, and the delay did not cause the absentee-ballot deadline of R.C. 3509.01 to pass before this case was filed and fully briefed. Cf. *Brinda*, 115 Ohio St.3d 299, 2007-Ohio-5228, 874 N.E.2d 1205, ¶ 13.

{¶ 27} Therefore, under these circumstances, laches does not bar our consideration of the merits of this expedited election case. See *State ex rel. Becker v. Eastlake* (2001), 93 Ohio St.3d 502, 505, 756 N.E.2d 1228 ("the fundamental tenet of judicial review in Ohio is that courts should decide cases on their merits").

### Prohibition

{¶ 28} Relators request a writ of prohibition to prevent the board of elections and its members from placing the referendum of the zoning amendment on the March 4, 2008 election ballot. To be entitled to the writ, relators must establish that (1) the board of elections is about to exercise quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of law. *State ex rel. Choices for South–Western City Schools v. Anthony,* 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 29.

{¶ 29} Relators have established the first and third requirements for the writ. The board of elections exercised quasi-judicial authority by denying the protest after conducting a hearing that included sworn testimony. *State ex rel. Reese v. Cuyahoga Cty. Bd. of Elections,* 115 Ohio St.3d 126, 2007-Ohio-4588, 873 N.E.2d 1251, ¶ 17. Relators also lack an adequate remedy in the ordinary course of law, given the proximity of the election date. *State ex rel. Columbia Res. Ltd. v. Lorain Cty. Bd. of Elections,* 111 Ohio St.3d 167, 2006-Ohio-5019, 855 N.E.2d 815, ¶ 28.

{¶ 30} For the remaining requirement of the exercise of unauthorized power, "we must determine whether the board [of elections] acted fraudulently or corruptly, abused its discretion, or clearly disregarded applicable law." *State ex rel. Brown v. Butler Cty. Bd. of Elections,* 109 Ohio St.3d 63, 2006-Ohio-1292, 846 N.E.2d 8, ¶ 23. There is no evidence of fraud or corruption here, so relators must establish that the board of elections abused its discretion or clearly disregarded applicable law by denying their protest and certifying the referendum on the zoning amendment to the election ballot. "An abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude." *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections* (1997), 80 Ohio St.3d 302, 305, 686 N.E.2d 238.

{¶ 31} Relators assert that the board of elections abused its discretion and clearly disregarded applicable law by denying their protest because (1) the referendum petition was not filed with the board of township trustees as required by R.C. 519.12(H), (2) the board of township trustees did not certify the petition to the board of elections in accordance with R.C. 519.12(H), and (3) the board of elections certified the petition to the ballot without a majority vote in violation of R.C. 3501.11(K).

### R.C. 519.12(H) Filing Requirement

{¶ 32} Under R.C. 3501.39(A)(2), a board of elections must reject any petition if it "violates any requirement established by law." "[T]he settled rule is that election laws are mandatory and require strict compliance and that substantial

compliance is acceptable only when an election provision expressly states that it is." *State ex rel. Ditmars v. McSweeney* (2002), 94 Ohio St.3d 472, 476, 764 N.E.2d 971. Because R.C. 519.12(H) does not expressly state that substantial compliance is sufficient, strict compliance is required. *State ex rel. McCord v. Delaware Cty. Bd. of Elections,* 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 36.

{¶ 33} R.C. 519.12(H) provides that a township zoning referendum "petition shall be filed with the board of township trustees." The board of elections claims that the phrase "filed with the board of township trustees" includes the delivery of a referendum petition to the private residence of a trustee who has signed the petition.

{¶ 34} In construing a statute, "our paramount concern is the legislative intent in enacting the statute." *State ex rel. Steele v. Morrissey,* 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. "To discern this intent, we first consider the statutory language, reading words and phrases in context and construing them in accordance with rules of grammar and common usage." *Choices for South–Western City Schools,* 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 40.

{¶ 35} The plain language of R.C. 519.12(H) prevented the board of elections from certifying the referendum because the petition was never "filed with the board of township trustees." See *State ex rel. Canales–Flores v. Lucas Cty. Bd. of Elections,* 108 Ohio St.3d 129, 2005-Ohio-5642, 841 N.E.2d 757, ¶ 26, relying on Garner, Black's Law Dictionary (8th Ed.2004) 660, which defines "file" to mean "[t]o deliver a legal document to the court clerk or record custodian for placement into the official record." The petition here was not submitted to a township fiscal officer or other record custodian and was not placed into an official township record when it was delivered to the personal residence of Trustee Tillman on October 14. In fact, the referendum petition included a space for the date it was filed and a signature line for the township fiscal officer, but these spaces are blank. In prescribing this form, the secretary of state has apparently determined that R.C. 519.12(H) requires the filing of township zoning referendum petitions with township fiscal officers, and that is a reasonable interpretation of the statute. See, e.g., *State ex rel. Sinay v. Sodders* (1997), 80 Ohio St.3d 224, 228–229, 685 N.E.2d 754 (court defers to reasonable interpretation of election statutes by secretary of state as expressed in petition forms prescribed by the secretary). See also R.C. 507.04, requiring the township fiscal officer to maintain certain township records.

{¶ 36} R.C. 519.12(H) also requires that "[i]n addition to meeting the requirements of this section, each petition shall be governed by the rules specified in section 3501.38 of the Revised Code." R.C. 3501.38 specifies requirements for

petitions that are filed with "the secretary of state or a board of elections or *with any other public office.*" (Emphasis added.) A personal residence is not a public office.

{¶ 37} As relators observe, the filing requirement is not merely technical. See *State ex rel. Bogart v. Cuyahoga Cty. Bd. of Elections* (1993), 67 Ohio St.3d 554, 621 N.E.2d 389 (writ granted to compel board of elections to uphold protest and reject referendum petition when a precirculation copy was not filed with the correct public officer). Adopting the board's construction of the pertinent statutes would lead to the absurd result that the delivery of referendum petitions to private residences of public officials, which are not open to the public, constitutes proper filing in a public office. See *State ex rel. Todd v. Felger*, 116 Ohio St.3d 207, 2007-Ohio-6053, 877 N.E.2d 673, ¶ 10 (court has duty to construe statutes to avoid unreasonable or absurd result). Even worse, the filing that the board of elections condoned here was to the private residence of a trustee who had signed the petition and thus had an interest in the matter.

{¶ 38} As long as a petition is located in a private residence, the board's construction would deprive electors and other interested persons of an initial opportunity to inspect the petition to determine whether it complies with applicable legal requirements. Cf. *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections* (1995), 72 Ohio St.3d 289, 294, 649 N.E.2d 1205 (one of the purposes of the ten-day period of R.C. 731.28 and 731.34 regarding municipal petitions filed with a public office is to permit electors to inspect petitions to determine whether they comply with legal requirements). Trustee Tillman kept at his home the referendum petition that he had signed from October 14, the date it was given to him, until October 26, when he personally delivered it to the board of elections. Relators correctly note that "a petition stored at the private residence of one of the signers provides little safeguard to ensure that the petition is not altered or that signatures are not added or corrected outside of the time provided by law." See R.C. 3501.38(I)(1) ("No alterations, corrections, or additions may be made to a petition after it is filed in a public office").

{¶ 39} The elections board and its members claim that there is an exception to the filing requirement of R.C. 519.12(H) for rural townships in which the township building "is not regularly manned and documents are not 'filed' as that term is commonly understood." But the statute contains no exception, and we cannot add one to its express language. *State ex rel. Lee v. Karnes,* 103 Ohio St.3d 559, 2004-Ohio-5718, 817 N.E.2d 76, ¶ 25, quoting *State v. Hughes* (1999), 86 Ohio St.3d 424, 427, 715 N.E.2d 540 (" 'In construing a statute, we may not add or delete words' ").

{¶ 40} The board of elections and its members rely on an affidavit of Trustee Tillman attached to their merit brief to support an exception to the filing

requirement. In that affidavit, Trustee Tillman states that except for regular and special meetings of the board of township trustees, the township building is "not manned or open for business" and that "[i]nformation and other documents to be delivered to the Township are delivered to one of the trustees or the Fiscal Officer." Although citizens supporting the referendum raised this argument at the protest hearing, no evidence was introduced at the hearing on it, and the elections board's decision was not based on it. Just as a claim that the board of elections abused its discretion or clearly disregarded applicable law could not be based on evidence that was never presented to it, *State ex rel. Crossman Communities of Ohio, Inc. v. Greene Cty. Bd. of Elections* (1999), 87 Ohio St.3d 132, 137, 717 N.E.2d 1091, overruled on other grounds, *State ex rel. Commt. for Referendum of Ordinance No. 3844–02 v. Norris,* 99 Ohio St.3d 336, 2003-Ohio-3887, 792 N.E.2d 186, ¶ 30–41, the board's decision to deny relators' protest cannot be supported by evidence that was not introduced at the hearing and upon which it did not rely. Moreover, nothing prevented the referendum petitioners from filing the petition with the township fiscal officer instead of an interested trustee at his private residence. And nothing precluded the trustee who had signed the petition from timely submitting the petition to the township fiscal officer or the entire board of township trustees.

{¶ 41} The board of elections and its members erroneously rely on *State ex rel. Cundiff v. Portage Cty. Bd. of Elections* (Apr. 29, 1994), Portage App. No. 94–P–0023, 1994 WL 171723, to support their decision that the delivery of the referendum petition to the trustee's home was a proper filing under R.C. 519.12(H). *Cundiff,* however, is distinguishable because the relevant discussion in that case is dicta and because the referendum petition in that case was given to the chairman of the board of township trustees in the town hall and was forwarded to a township secretary, who placed the petition in a cabinet in the town hall and advised the township clerk about the receipt and storage of the petition. The petition was thus delivered to a public official in a public building and was then forwarded to the records custodian for placement in the township records. Here, the referendum petition was delivered to a private residence and was never given to the township fiscal officer or placed in the township records.

{¶ 42} Therefore, because the petition was never filed with the board of township trustees, the referendum petition violated R.C. 519.12(H).

### R.C. 519.12(H) Certification Requirement

{¶ 43} R.C. 519.12(H) also requires that "[w]ithin two weeks after receiving a petition filed under this section, the board of township trustees shall certify the petition to the board of elections." The petition must be certified to the board of elections "not less than seventy-five days prior to the election at which the question is to be voted upon." R.C. 519.12(H). "Certify" means "to confirm or

attest often by a document under hand or seal as being true, meeting a standard, or being as represented." Webster's Third New International Dictionary (1986) 367; see also Garner, Black's Law Dictionary (8th Ed.2004) 241, defining "certify" as "[t]o attest as being true or as meeting certain criteria." The board of township trustees exercises a limited authority under R.C. 519.12(H) to determine whether a township zoning referendum petition is valid on its face, but it does not inquire into questions not evident on the face of the petition. See, e.g., 1971 Ohio Atty.Gen.Ops. No. 71–052, 2–176, 2–178; cf. *Sinay,* 80 Ohio St.3d at 231, 685 N.E.2d 754, interpreting comparable authority for municipal officers in certifying municipal petitions.

{¶ 44} The uncontroverted evidence before the board of elections established that the board of township trustees never certified to the board of elections that the referendum petition was valid on its face. The board of township trustees never even reviewed the petition. Instead, without any authorization by the board of township trustees, Trustee Tillman delivered the petition to the board of elections. "A single member [of the board of township trustees] does not constitute a board and, unless authorized by statute, cannot act as the board." *State ex rel. Saxon v. Kienzle* (1965), 4 Ohio St.2d 47, 48, 33 O.O.2d 387, 212 N.E.2d 604. "[T]he formal action in response to such referendum petitions by a board of township trustees must be conducted at a session that would satisfy the requirements of a legally valid meeting." *Cundiff,* Portage App. No. 94–P–0023, 1994 WL 171723, at *2; see also R.C. 121.22(H) ("A resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body").

{¶ 45} Consequently, even assuming that the board of elections correctly ruled that the delivery of the referendum petition to Tillman's private residence on October 14, 2007, constituted a proper filing with the board of township trustees under R.C. 519.12(H), the board of township trustees never certified the petition to the board of elections within two weeks of that date. In fact, even the October 30 meeting was more than two weeks after October 14, and the minutes of that meeting do not indicate that the board ever certified the petition to the board of elections.

{¶ 46} Therefore, the referendum petition was not properly certified as required by R.C. 519.12(H).

## Conclusion

{¶ 47} Based on the foregoing, the board of elections abused its discretion and clearly disregarded R.C. 519.12(H) by denying relators' protest and certifying the referendum for the township zoning amendment to the election ballot. Although we liberally construe R.C. 519.12(H) in favor of the right of referendum, that statute's requirements were not followed here. *State ex rel. Gemienhardt v.*

*Delaware Cty. Bd. of Elections,* 109 Ohio St.3d 212, 2006-Ohio-1666, 846 N.E.2d 1223, ¶ 57. The referendum petitioners chose to deliver their petition to the private residence of one of the petitioners—a township trustee—and it was that trustee who delivered the petition to the board of elections without the board's authorization or certification. This is not a case in which the referendum was thwarted by the intentional actions of a public office opposed to it.

{¶ 48} Therefore, we grant the requested writ of prohibition to prevent the board of elections and its members from placing the township zoning amendment on the March 4, 2008 election ballot. By so holding, we do not address relators' remaining contention that fewer than the requisite majority of the elections board members voted to certify the referendum to the ballot, which has been rendered moot. *Reese,* 115 Ohio St.3d 126, 2007-Ohio-4588, 873 N.E.2d 1251, ¶ 35.

Writ granted.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., dissents.

———————

**PFEIFER, J., dissenting.**

{¶ 49} The ways of government in Jefferson Township are not the same as those in Columbus or Cleveland or Cincinnati. And that is probably for the better. An informal, grassroots form of government like that in Jefferson Township should not be held to performing the administrative niceties that might be expected of local governments in larger, urban areas. This is not to say that township citizens and their governments should not be required to strictly comply with R.C. 519.12(H). However, this court should have an open mind as to what constitutes strict compliance. Pursuant to R.C. 519.12(H), the petitioners here had to file their petition with the township board of trustees, and the board of trustees had to certify the petition to the board of elections. The statute does not set forth strict requirements as to what constitutes "filing" or "certification." Given the realities and limited resources of this particular township government, I would hold that both filing and certification were achieved here. This court ought not stand in the way of the exercise of pure democracy that this case represents: an informed, interested electorate deciding how the future will unfold in their own community.

Vorys, Sater, Seymour & Pease, L.L.P., Joseph R. Miller, and John M. Kuhl, for relators.

Gerald L. Heaton, Logan County Prosecuting Attorney, for respondents.