**HUNTER et al.,**

v.

**BRITTEN et al.**

[Cite as *Hunter v. Britten*, 180 Ohio App.3d 755, 2009-Ohio-663.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–08–019.

Decided Feb. 11, 2009.

Charles E. Bloom and Laura A. Csomos, for relators.

Paul A. Dobson, Wood County Prosecuting Attorney, and Linda J. Holmes, Assistant Prosecuting Attorney, for respondents.

SKOW, Presiding Judge.

{¶ 1} This matter is before the court on a petition for a writ of mandamus. Relators, Lynn Hunter, William A. Schwartz, Kimberly A. Schwartz, William D. Kahl, and Pamela Neal, seek a writ of mandamus from this court ordering respondents, Perrysburg Township, the Trustees of Perrysburg Township—Gary Britten, Craig LaHote, and Robert Mack—and the Perrysburg Fiscal Officer, Shirley Haar, to certify referendum petitions to the Wood County Board of Elections.

{¶ 2} We issued an alternative writ, ordering respondents either to certify the referendum petitions as requested by relators or to show cause why they are not required to do so by filing an answer to the petition. Respondents filed an answer on April 28, 2008. A scheduling order issued, discovery was had, and relators and respondents both filed motions for summary judgment.

{¶ 3} On October 24, 2008, this court found the existence of a genuine issue of material fact, thus precluding summary judgment. In that order, we found the following facts, as demonstrated by respondents' answer and the evidence submitted in support of and in opposition to summary judgment.

{¶ 4} On December 17, 2007, respondents Craig LaHote, Gary Britten, and Robert Mack (collectively, "trustees"), voted unanimously to pass three resolutions that amended the township's zoning of three parcels of real estate in order to allow for residential development.[1] The township designated and referred to the three parcels as the Neiderhouse, Wolf, and DeChristopher parcels.

{¶ 5} Pursuant to R.C. 519.12, relators filed three referendum petitions with respondent Shirley Haar, Fiscal Officer of Perrysburg Township, seeking to place before the electorate of Perrysburg Township the issue of whether each of the three zoning amendments should be adopted. The form petitions used by relators to gather signatures were copied from a form provided by the Wood County Board of Elections. Relator Lynn Hunter avers that maps of the areas affected by the zoning amendments were attached to each referendum petition when she filed them. Hunter attached to her affidavit copies of the petitions that, Hunter states, were filed with Haar. These copies do have maps attached.

{¶ 6} John Hrosko met relators in the township office, accepted the referendum petitions for filing, and placed them on Shirley Haar's desk. Hrosko then called respondent Gary Britten, a trustee, and advised him that referendum petitions on the zoning amendments had been filed. Britten met Hrosko at the office. Armed with a copy of R.C. 519.12, the two reviewed the three referendum petitions together. Both state in affidavits that they did not see a map attached to any of the three petitions as required by R.C. 519.12(H). Additionally, Britten states in his affidavit that he noticed that the petition forms did not include a space for signators to indicate their voting precinct.

{¶ 7} The following day, Haar received the petitions. In her affidavit, she states that she was unfamiliar with the referendum process, so she called the elections board to inquire what should be done. Haar avers that Debbie Hazard, a co-director of the elections board, told Haar to bring the petitions to the

---

1. We denied a motion to intervene filed by Miller Diversified Holdings, L.L.C., and McCarthy Builders, Inc.

elections board and they would determine whether the petition signers were registered voters.

{¶ 8} Haar also states in her affidavit that before taking the original referendum petitions to the elections board, she and Sharon Kerr, the township's receptionist and secretary, made copies of the petitions. Both Haar and Kerr state in their affidavits that they did not see any maps attached to any of the three petitions. The copies of the petitions that Haar made are attached to her affidavit; no maps are attached to the copies.

{¶ 9} Five days after Haar took the petitions to the elections board, Hazard advised Haar that the "signature verification" was complete. When Haar received the petitions back from the elections board, she observed invalid signatures initialed in red. Relators alleged in their complaint for a writ, but respondents denied, that Haar "forwarded" the referendum petitions to the Wood County Board of Elections to determine the sufficiency and validity of the petitions as required by R.C. 519.12.

{¶ 10} Relators alleged in their complaint, and respondents admitted, that the trustees did not give notice to the relators or other circulators of the referendum petitions that they intended to pass a resolution on March 3, 2008, a regular meeting of the trustees, not to certify the referendum petitions to the board of elections. In their answer, respondents contend that they had no duty under Ohio law to give any notice of their intent.

{¶ 11} The trustees unanimously resolved not to certify the referendum petitions at that meeting. Copies of that meeting's minutes have been submitted on summary judgment. The trustees gave three reasons in support of their vote of noncertification: (1) the petitions did not provide a space for signors to list their voting precinct, (2) the petitions did not accurately describe the zoning amendment by listing conditions of the amendment, (3) the petitions incorrectly described the affected property by listing inaccurate acreage.

{¶ 12} In their answer, respondents raised the following self-labeled "affirmative defenses": (1) failure to state a claim for relief pursuant to Civ.R. 12(B)(6), (2) "Estoppel is not a valid defense against the state, a political subdivision or its agents," (3) "Respondents have no duty to certify zoning referendum petitions to the Board of Elections if they are facially invalid," (4) a statement that a "referendum petition is invalid if the summary is inaccurate or ambiguous or written such that the ordinary citizen could not understand what he/she is asked to sign," and (5) a statement that "Ohio Revised Code 519.12 specifies a zoning referendum form which requires signators indicate/fill in their voting precinct."

{¶ 13} We granted respondents' motion for summary judgment on all of the above issues except one: whether the referendum petitions were facially valid at

the time relators filed the petitions with respondents. The following law applies to the issue and evidence raised at the evidentiary hearing.

## Mandamus

{¶ 14} A writ of mandamus is a "writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station." R.C. 2731.01. "For a writ of mandamus to issue, the relator must demonstrate ' "(1) that he has a clear legal right to the relief prayed for, (2) that respondents are under a clear legal duty to perform the acts, and (3) that relator has no plain and adequate remedy in the ordinary course of the law." ' " *State ex rel. Am. Legion Post 25 v. Ohio Civ. Rights Comm.*, 117 Ohio St.3d 441, 2008-Ohio-1261, 884 N.E.2d 589, ¶ 11, quoting *State ex rel. Westbrook v. Ohio Civ. Rights Comm.* (1985), 17 Ohio St.3d 215, 17 OBR 449, 478 N.E.2d 799, quoting *State ex rel. Harris v. Rhodes* (1978), 54 Ohio St.2d 41, 42, 8 O.O.3d 36, 374 N.E.2d 641.

{¶ 15} Therefore, a writ of mandamus will issue only if relators demonstrate (1) a clear legal right to have the referendum petitions certified to the board of elections, (2) a clear legal duty on the part of the trustees to certify the referendum petitions, and (3) no plain and adequate remedy in the ordinary course of law. *State ex rel. Webb v. Bliss*, 99 Ohio St.3d 166, 2003-Ohio-3049, 789 N.E.2d 1102, ¶ 8.

## Referendum Petitions

{¶ 16} "The requirements for referendum petitions provide the mechanics for securing the ultimate and important goal of the legitimate obtaining of a voted expression of the will of the electorate. Courts should strive to nurture and preserve the integrity of the right of referendum." *Markus v. Trumbull Cty. Bd. of Elections* (1970), 22 Ohio St.2d 197, 200, 51 O.O.2d 277, 259 N.E.2d 501. However, if "statutory provisions relative to the submission of a referendum to the voters have not been complied with, that submission may be enjoined." Id. at 199, 51 O.O.2d 277, 259 N.E.2d 501, citing *Cincinnati v. Hillenbrand* (1921), 103 Ohio St. 286, 133 N.E. 556; *Pfeifer v. Graves* (1913), 88 Ohio St. 473, 104 N.E. 529.

## Authority and Duties of the Township Trustees

{¶ 17} R.C. 519.12 contains the procedural requirements governing referendum petitions that must be followed in order to place a zoning amendment issue on a ballot before the electorate. "What the General Assembly has done in Section 519.12, Revised Code, is to provide the people of the several townships with a power to veto, by use of the device of referendum, zoning resolutions passed by

township trustees." *Cook–Johnson Realty Co. v. Bertolini* (1968), 15 Ohio St.2d 195, 200, 44 O.O.2d 160, 239 N.E.2d 80.

{¶ 18} After specifying the form that a referendum petition must take, the statute provides:

{¶ 19} "The petition shall be filed with the board of township trustees and shall be accompanied by an appropriate map of the area affected by the zoning proposal. Within two weeks after receiving a petition filed under this section, the board of township trustees shall certify the petition to the board of elections. A petition filed under this section shall be certified to the board of elections not less than seventy-five days prior to the election at which the question is to be voted upon.

{¶ 20} "The board of elections shall determine the sufficiency and validity of each petition certified to it by a board of township trustees under this section. If the board of elections determines that a petition is sufficient and valid, the question shall be voted upon at a special election to be held on the day of the next primary or general election that occurs at least seventy-five days after the date the petition is filed with the board of township trustees, regardless of whether any election will be held to nominate or elect candidates on that day." R.C. 519.12.

{¶ 21} The plain language of the statute indicates that once a referendum petition is duly filed with the board of trustees of a township, then the trustees have two weeks in which to certify the petition to the board of elections. " 'Certify' means 'to confirm or attest often by a document under hand or seal as being true, meeting a standard, or being as represented.' Webster's Third New International Dictionary (1986) 367; see also Garner, Black's Law Dictionary (8th Ed.2004) 241, defining 'certify' as '[t]o attest as being true or as meeting certain criteria.' " *State ex rel. Stoll v. Logan Cty. Bd. of Elections*, 117 Ohio St.3d 76, 2008-Ohio-333, 881 N.E.2d 1214, ¶ 43.

{¶ 22} Before township trustees certify a petition, they may examine the petition for facial defects. If a facial defect is found, then the trustees are not required to certify the petition to the board of elections. "The board of township trustees exercises a limited authority under R.C. 519.12(H) to determine whether a township zoning referendum petition is valid on its face, but it does not inquire into questions not evident on the face of the petition." *State ex rel. Stoll v. Logan Cty. Bd. of Elections*, 117 Ohio St.3d 76, 2008-Ohio-333, 881 N.E.2d 1214, ¶ 43.

{¶ 23} In *Stoll*, the Ohio Supreme Court relied upon an Ohio Attorney General's Opinion, 1971 Ohio Atty.Gen.Ops. No. 71–052. The syllabus of that opinion reads: "A board of township trustees has a duty to determine whether

petitions [requesting] a referendum on the zoning amendment filed with the board are valid on their face for presentation to the board of elections, but does not have power to inquire into other matters respecting said petitions." (As quoted in *State ex rel. Diversified Realty, Inc. v. Perry Twp. Bd. of Trustees* (1974), 42 Ohio App.2d 56, 58, 71 O.O.2d 271, 327 N.E.2d 789.)

{¶ 24} When determining validity, however, trustees may not exceed their authority by inquiring into matters not evident from the face of the petition. R.C. 519.12(H) expressly allocates the authority to determine the validity and sufficiency of referendum petitions to boards of elections. Additionally, R.C. 3501.11(K) and 3501.39 also allocate authority and responsibility to boards of elections to determine the sufficiency and validity of municipal initiative and referendum petitions. *State ex rel. Ryant Commt. v. Lorain Cty. Bd. of Elections* (1999), 86 Ohio St.3d 107, 112, 712 N.E.2d 696, citing *State ex rel. Manos v. Delaware Cty. Bd. of Elections* (1998), 83 Ohio St.3d 562, 564, 701 N.E.2d 371. See also *State ex rel. Diversified Realty, Inc. v. Perry Twp. Bd. of Trustees,* 42 Ohio App.2d 56, 71 O.O.2d 271, 327 N.E.2d 789.

{¶ 25} The parties do not dispute that relators filed the referendum petitions with the trustees. Once that was accomplished, the trustees were required by statute to certify the petitions to the board of elections within two weeks. Respondents may be excused from this mandate only if, within the limited authority conferred upon them by statute, they validly exercised their authority by finding that the petitions were facially defective.

Procedural History

{¶ 26} The issue, on summary judgment, was whether any of respondents' objections to the referendum petitions fell outside the limits of their authority. "[T]ownships are creatures of the law and have only such authority as is conferred on them by law." *State ex rel. Schramm v. Ayres* (1952), 158 Ohio St. 30, 33, 48 O.O. 1, 106 N.E.2d 630. Respondents' objections to the petitions, therefore, must be directed only to the category of things necessary to make a referendum petition "valid on its face." If respondents exceeded their authority by objecting to issues of the petitions' sufficiency or issues beyond the petitions' facial validity, then they may not be excused from their legal duty to certify the petitions to the board of elections.

{¶ 27} We granted summary judgment to relators on three of respondents' objections. First, the trustees concluded that the petitions did not include a place for signators to designate their precinct as required by R.C. 519.12. Second, they alleged that the petitions did not have an accurate, unambiguous description of the annexation conditions placed upon the rezoning of the individual parcel. Third, they alleged that the petitions did not have accurate acreage for

the property that was rezoned. We found that each of these three objections involved matters beyond respondents' authority, as they were not issues of facial validity. *State ex rel. Stoll v. Logan Cty. Bd. of Elections,* 117 Ohio St.3d 76, 2008-Ohio-333, 881 N.E.2d 1214, ¶ 43. None of these three objections, therefore, excused respondents from their duty to certify the petitions to the board of elections.

{¶ 28} We did find, however, the existence of a genuine issue of material fact that precluded summary judgment for either party. At some point subsequent to their vote of noncertification, respondents raised the objection that the referendum petitions did not have maps attached as required by R.C. 519.12.

{¶ 29} R.C. 519.12(H) clearly requires referendum petitions to have an appropriate map of the affected area attached at the time of filing with the board of trustees. The requirement is "plainly mandatory." *State ex rel. Columbia Res. Ltd. v. Lorain Cty. Bd. of Elections,* 111 Ohio St.3d 167, 2006-Ohio-5019, 855 N.E.2d 815, ¶ 31, citing *State ex rel. McCord v. Delaware Cty. Bd. of Elections,* 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336. The statute does not require a map to be attached to the referendum petitions while they are circulating for signatures. Id. at ¶ 32. However, the requirement that a map be attached at the time of filing with the trustees "demands strict compliance." Id. at ¶ 42.

{¶ 30} Relator Lynn Hunter submitted an affidavit stating that maps were attached to the referendum petitions at the time of their filing with respondents. Hunter has submitted copies of the referendum petitions, with maps attached, and stated in her affidavit that the copies are true copies of the petitions as they were filed with the trustees. Relator Kimberly Schwartz submitted an affidavit stating that she obtained copies of the appropriate maps and that the maps were attached to the petitions when they were filed. She was unclear as to where she obtained the maps, stating that she obtained them from either respondents' zoning office or from the trustees' office.

{¶ 31} Respondents have submitted the affidavits of Shirley Haar, township fiscal officer; Gary Britten, trustee; John Hrosko, township administrator; Sharon Kerr, township secretary; and Dale David, Sharon Garand, and Paul Vadnais, election administrators with the board of elections. Each affiant has stated that at various times, they reviewed the referendum petitions, and each affiant has stated that he or she did not see a map attached to any of the petitions.

{¶ 32} These contradictory affidavits and testimony, supported with evidence accepted by Civ.R. 56, precluded summary judgment for either party. A genuine issue of fact existed as to whether the referendum petitions complied with the

"appropriate map" requirement of R.C. 519.12 and whether, therefore, they were facially valid at the time they were filed with the trustees. Accordingly, an evidentiary hearing was scheduled and evidence was taken.

## Evidence Adduced at Hearing

{¶ 33} Relators presented the testimony of Mary Jane Hughes, an employee of the Copy Center in Perrysburg, Ohio, and Kimberly Schwartz and Lynn Hunter, two circulators of the petitions. Hughes helped Hunter make photocopies of the petition packets the day of filing. She testified that she remembered seeing "a few maps" in the bundles of papers, but she was not sure how many maps there were. She also testified that Hunter left no papers behind after Hunter left the Copy Center.

{¶ 34} Schwartz testified that she obtained appropriate zoning maps from the trustees' office prior to circulating the petitions and that the maps were circulated with the petitions. She also accompanied Lynn Hunter and Tom Schwartz to respondents' office to file the petitions. Prior to doing so, she helped assemble the maps together with the petitions at her own home; she had verified that the same maps she obtained from the township office were attached to the petitions. The petition packets were not altered between the time they were assembled at her home until the time the petitions were delivered for filing. She testified that the maps were "absolutely" part of the petitions when they were filed.

{¶ 35} Lynn Hunter, previously a paralegal and now a special-education teacher, testified to her part in circulating and filing the petitions. She consulted with her husband, an attorney, and both reviewed the relevant statutes and consulted with the board of elections. They also consulted with another attorney. She was aware that appropriate maps had to be attached to the petitions as they were circulated and also when filed with the township trustees. Hunter took part in assembling the petitions at Kimberly Schwartz's house and ascertained that a map was attached to each petition when the petitions were filed. She took the sets to the Copy Center and made sure that maps were attached to each copy and to the originals. She kept copies for her own records and gave a copy to her attorney. She testified that there was "absolutely no doubt" in her mind that maps were attached to the petitions at the time of filing.

{¶ 36} John Hrosko testified that the petitions looked exactly how Lynn Hunter and Kimberly Schwartz described them at the time they were filed: Each petition was held together with rubber bands and had a clip at the top. He placed them on Shirley Haar's desk; the desk was in the office at large, so the petitions were "left out in the open." He called Gary Britten to tell him that petitions had been filed, and Britten informed Hrosko that he would be in the next day to review them.

{¶ 37} The next day, the petitions were still "out in the open" on Haar's desk when Britten came to the office. Hrosko and Britten went into a separate conference room with the petitions and a copy of R.C. 519.12. Hrosko testified that they went through each one of the petitions to see whether the signators lived in the zoned area. He stated, "We also noted that there had to be maps attached. We felt that those were, those were not there * * *."

{¶ 38} On cross-examination, Hrosko acknowledged that he and Britten both read through R.C. 519.12, and noted that maps were required but not attached. Then, the following exchange occurred:

{¶ 39} "Q. When was the first time that you brought that [the absence of maps] to anyone's attention?

{¶ 40} "A. It would have been that day probably.

{¶ 41} "Q. And whose attention did you bring it to?

{¶ 42} "A. Well, Gary [Britten] and I mutually saw that."

{¶ 43} Hrosko was then asked whether he knew that respondents had consulted with an attorney, Linda Holmes, who wrote an opinion on the validity of the petitions. He was then asked:

{¶ 44} "Q. Were you a little bit surprised that when she went through all of the requirements that there was nothing about a map not being attached to the petitions?

{¶ 45} "A. I think the map came when Mr. Britten and I were looking at that and a map of where those were and a map being the actual parcel map for each one of those properties."

{¶ 46} "Q. Did anyone tell Miss Holmes that there wasn't a map attached?

{¶ 47} "A. No. We could have, I don't recall through all the conversation [sic]."

{¶ 48} Respondents' counsel then stipulated that the map issue was not, in fact, raised in respondents' counsel's opinion on the validity of the petitions. Britten and Hrosko performed their private review on January 16, 2008, and respondents' counsel's opinion, admitted as an exhibit, was dated March 3, 2008.

{¶ 49} Minutes of the township trustees' meeting of March 3, 2008, were also placed into evidence. At that meeting, the trustees voted not to certify the petitions to the board of elections. Three reasons were given, and a failure to meet the map requirement of R.C. 519.12 was not listed among them.

{¶ 50} Respondent Gary Britten testified to the same sequence of events regarding reviewing the petitions the day after they were filed in the township trustees' office. After that day, he did not look at them again until "June or July," for the purpose of meeting with counsel to prepare for depositions in this

matter. He stated: "Well, I think you had talked to me in reference to coming down and meeting with you in your office one day in reference to talking about them, and that's when—I know I brought up the map thing up to you and I think at that time you were kind of unaware that, that they didn't have them [sic]." Respondents' counsel, however, wrote the opinion regarding the validity of the petitions several months previously. The opinion, dated March 3, 2008, states that the petitions were thoroughly reviewed and analyzes them pursuant to the "valid on its face" legal standard discussed supra. The opinion also cites the requirement of R.C. 519.12 that maps must be attached to the petitions at the time of filing. In its conclusion, the opinion lists, in bold for emphasis, three deficiencies in the petitions. A lack of attached maps is not one of the listed reasons.

{¶ 51} Shirley Haar and Sharon Kerr also testified, mainly to describe their experience of photocopying the petition packets prior to sending the originals to the board of elections for review of the signatures. She learned of the map requirement through conversation with Hrosko, about one month after the petitions were filed but before the vote of noncertification. Shirley Haar was also responsible for taking minutes of the trustees' meetings, and acknowledged that a lack of maps was not given as a reason supporting the vote of noncertification. Shirley Haar testified that she was not aware of the map requirement at the time she was copying the petitions. She stated, "I just don't remember seeing a map" at the time of photocopying. Likewise, Sharon Kerr did not recall seeing a map with any of the petitions at the time of photocopying. Kerr was not aware that the petitions required attached maps until after the petitions had been returned to the trustees' office after the board of elections' review.

{¶ 52} Dale David, an elections administrator with the board of elections, testified to his participation in reviewing the signatures on the petitions. He testified that during his review, he saw a map on the table where the petitions were being reviewed, but did not make any conclusion that the map was associated with the petitions. He saw only one map and could not recall whether the map had a caption.

## Analysis

{¶ 53} We initially and briefly dispense with relators' contention that due to our ruling on summary judgment, respondents have the burden of proof to demonstrate that a map was *not* attached to the petitions at the time of filing. Respondents' objection—that the petitions contained no map at the time of filing—is not an affirmative defense. Rather, respondents' contention is raised to counter relators' contention that a map *was* attached to the petitions at the time of filing. As always, in this mandamus action, relators have the burden to

demonstrate the existence of a clear legal right and a corresponding legal duty resting with respondents. *State ex rel. Am. Legion Post 25 v. Ohio Civ. Rights Comm.,* 117 Ohio St.3d 441, 2008-Ohio-1261, 884 N.E.2d 589.

{¶ 54} The testimony at the hearing amounted to a protracted "he said, she said" dispute. Credibility determinations are, therefore, necessary. Due to the cavalier and careless methods of respondents' office in accepting the petition for filing, and due to the contradictory testimony presented by respondents, we find that relators' testimony is more credible. Having thoroughly reviewed the evidence and sworn testimony adduced at the hearing, we find that relators have established, by clear and convincing evidence, that maps were attached to the referendum petitions at the time they were filed with respondents. On cross-motions for summary judgment, we determined that respondents' other excuses for not certifying the referendum petitions to the board of elections involved determinations outside of their statutory authority. Therefore, relators have demonstrated the existence of a clear legal right to have the petitions certified to the board of elections and a corresponding legal duty of respondents to perform the act.

{¶ 55} The fact that relators have not produced firm, concrete proof that a map was attached for filing raises the question of the filing methods of respondents' office. Relators were not given a stamped copy of the petition. Once John Hrosko received the petitions, he placed them on Shirley Haar's desk where they sat, in the open communal office, for the remainder of the day. The next day, only one respondent—Gary Britten—was notified of the petitions' filing; Britten testified that he was called because Hrosko knew how important and pressing the issue was to him. Britten testified that he and Hrosko separately and privately reviewed the petitions to determine whether the signators lived within the zoned areas of the township. This job, however, was properly for the board of elections.

{¶ 56} Several glaring questions are raised by respondents' testimony and evidence: If John Hrosko and Gary Britten, armed with a copy of R.C. 519.12, noted—one day after the petitions were filed—that no maps were attached as required by that statute, why did respondents fail to rely upon this reason in their vote of noncertification? Why could neither explain their failure to bring the issue to anyone's attention? Why did respondents' counsel, who reviewed the petitions and the map requirement of R.C. 519.12 when writing her legal opinion on the petitions' validity, not mention that no maps were attached to the petitions? Respondents have presented no satisfactory answers to these questions.

{¶ 57} Further, relators' burden is to demonstrate only that maps were attached *at the time of filing* the petitions. The testimony presented by relators is that maps obtained from the township trustees' zoning office related to each

parcel were attached to each petition at the time of filing. In contrast, respondents have presented testimony only that maps were not attached *after the time of filing.* The soonest anyone testified to recognizing a lack of maps attached to the petitions was the day after the petitions were filed. However, the issue was not formally raised until after the instant action was commenced. After the petitions were filed, they were out of relators' hands. It is not relators' burden to demonstrate that maps were attached after the time of filing.

{¶ 58} Considering all circumstances, and considering the necessity of credibility determinations on the issue due to a lack of concrete documentation of the filing, we conclude that relators have demonstrated, by clear and convincing evidence, that maps were attached to the petitions at the time the petitions were filed with respondents.

{¶ 59} Since the issue is close, this court must, in the sound exercise of legal and judicial discretion, consider all the facts and circumstances of the case. *State ex rel. Pressley v. Indus. Comm.* (1967), 11 Ohio St.2d 141, 163, 40 O.O.2d 141, 228 N.E.2d 631. "When deciding whether the extraordinary writ of mandamus is appropriate, a court may consider the facts and circumstances of the particular case, such as: (1) the applicant's rights, (2) the interests of third persons, (3) the importance or unimportance of the case, (4) the applicant's conduct, (5) the equity and justice of the relator's case, (6) public policy and the public's interest, (7) whether the performance of the act by the respondent would give the relator any effective relief, and (8) whether such an act would be impossible, illegal, or useless." *State ex rel. Berquist v. Bd. of Trustees of the Ohio Police & Fire Pension Fund,* 174 Ohio App.3d 516, 2008-Ohio-278, 882 N.E.2d 974, ¶ 13, citing *State ex rel. Pressley v. Indus. Comm.* (1967), 11 Ohio St.2d at 162, 40 O.O.2d 141, 228 N.E.2d 631.

{¶ 60} We examine each of the *Pressley* factors in turn. First, relators assert the right to have the trustees certify the petitions to further their exercise of the right to referendum. "Courts should strive to nurture and preserve the integrity of the right of referendum." *Markus v. Trumbull Cty. Bd. of Elections* (1970), 22 Ohio St.2d 197, 200, 51 O.O.2d 277, 259 N.E.2d 501. The right to referendum is " 'of paramount importance.' " *State ex rel. Heffelfinger v. Brunner,* 116 Ohio St.3d 172, 2007-Ohio-5838, 876 N.E.2d 1231, ¶ 15, quoting *State ex rel. Ohio Gen. Assembly v. Brunner,* 115 Ohio St.3d 103, 2007-Ohio-4460, 873 N.E.2d 1232, ¶ 8–9. The right to referendum serves the "ultimate and important goal" of a "voted expression of the will of the electorate," which courts "should strive to nurture and preserve." *Markus v. Trumbull Cty. Bd. of Elections,* 22 Ohio St.2d at 200, 51 O.O.2d 277, 259 N.E.2d 501. Courts must liberally construe referendum powers "so as to permit rather than to preclude their exercise by the people." *State ex rel. Laughlin v. James,* 115 Ohio St.3d

231, 2007-Ohio-4811, 874 N.E.2d 1145, ¶ 25. This factor obviously weighs in relators' favor.

{¶ 61} Second and third, the parties have repeatedly remarked on the importance of this case to third parties and the importance of this case in general. Relators seek to prevent the development of nearby parcels into large, single-family home subdivision projects. Respondents have stated in their briefs to this court that the developer of the parcels has made it known that "if he were unsuccessful in rezoning the property through the township, he would annex to the city [of Perrysburg]." Respondents have also stated their concern that the developer would further force the annexation of large businesses in Perrysburg Township to the city of Perrysburg. Therefore, the case is important not only to respondents and relators, but also to developers, business owners, and the general electorate, all parties potentially affected by the rezoning.

{¶ 62} The fourth factor, the conduct of relators, weighs in relators' favor. Throughout these proceedings, they have demonstrated conscientious efforts to comply with applicable rules governing referendum petitions. They have acted from a concern for their community and their environment. Respondents have not pointed to any improper actions taken by relators.

{¶ 63} Fifth, concerns of equity and justice weigh heavily in relators' favor. Again, relators have put forth serious efforts to comply with the rules governing referendum petitions. Prior to circulating and filing the petitions, they consulted legal counsel. Each testifying relator expressed definite knowledge that the law required maps to be attached to the petitions at the time of filing. Further, each testifying relator unambiguously asserted that maps were conscientiously attached to each petition at the time of filing. Respondents gave relators no concrete proof of the petitions' condition at the time of filing. Instead, respondents treated the petitions in a curiously casual manner: by placing them on a desk in the open; by informally notifying one particularly interested respondent of the petitions' arrival; by allowing one particularly interested respondent to examine the petitions more or less privately; and by purportedly noticing a lack of attached maps and then failing to raise the issue until after the instant action was commenced.

{¶ 64} "Equity from its inception has had jurisdiction to concern itself with mistakes." *Sloan v. Std. Oil Co.* (1964), 177 Ohio St. 149, 29 O.O.2d 355, 203 N.E.2d 237, citing 3 Pomeroy, Equity Jurisprudence, 281, Section 838. Since relators have established, by clear and convincing evidence, that appropriate maps were attached to the petitions at the time of their filing with respondents, equity requires respondents to fix their mistake of misplacing the attached maps by replacing them. "[I]t certainly would not speak well for law or equity, were a court, under the influence of a blind and prohibited adherence to a technical rule,

to depart from the manifest spirit of a positive statute, for the purpose of working out injustice to a fellow citizen." *Seely v. State* (1843), 12 Ohio 496.

{¶ 65} Sixth, public policy and the public's interest in the positive exercise of the right to referendum are well-established in law. As discussed supra, placing this issue before the electorate serves the important public purpose of allowing citizens a voice in the shaping of their community. Invalidating the petitions on the ground that no maps were attached serves no public interest or public purpose. R.C. 519.12 requires maps to be attached to the petitions in order to show the area affected by the zoning proposal. R.C. 519.12 does not require that maps be attached to the petitions during circulation. The Ohio Supreme Court has found the lack of any such requirement notable. *State ex rel. Columbia Res. Ltd. v. Lorain Cty. Bd. of Elections,* 111 Ohio St.3d 167, 2006-Ohio-5019, 855 N.E.2d 815, ¶ 32. As another court has observed, it is not clear what the legislative purpose was in mandating that maps be attached to the petitions only at the time of their filing if not during circulation. *State ex rel. Oberer Dev. Co. v. Montgomery Bd. of Elections* (Sept. 13, 1996), 2d Dist. No. CA–16075, 1996 WL 532335.

{¶ 66} Seventh, certification of the petitions by respondents would give relators effective relief. The board of elections, after receiving the certified petitions, determines the sufficiency and validity of the petitions, so relators' petitions must still clear hurdles before the issues are presented to the electorate. However, relators' effort to place these issues before the electorate would conclusively end if respondents were allowed to prevail by virtue of their own error.

{¶ 67} Last, performance of the act by respondents is ministerial in nature. Unlike official actions that require the exercise of discretion, a writ will more swiftly issue to compel the performance of ministerial actions. *State ex rel. Armstrong v. Davey* (1935), 130 Ohio St. 160, 163, 4 O.O. 38, 198 N.E. 180. Convening for the purpose of voting to certify the petitions may be done at respondents' next regularly scheduled meeting. R.C. 519.12 makes clear that respondents have a duty to vote to certify the petitions to the board of elections if the petitions are facially valid.

{¶ 68} Also, since we conclude that the petitions were facially valid at the time of their filing, respondents must now correct the error that they must have caused. A long-standing maxim of equity regards that which ought to have been done, as done. *Allen v. Register Life Ins. Co.* (1931) 38 Ohio App. 562, 568, 176 N.E. 588. This is not impossible, as respondents have the necessary and appropriate maps required for the petitions in their possession. Further, correction of the error and certification of the petitions is necessary to provide relators relief from respondents' error.

{¶ 69} For the foregoing reasons, relators are entitled to a writ of mandamus, and a writ is hereby awarded. Accordingly, respondents are hereby ordered to certify the petitions to the board of elections according to statute. Further, respondents are ordered to attach an appropriate map of the area to be affected by the zoning amendments to each referendum petition prior to transmitting the referendum petitions to the board of elections. Costs are assessed to respondents.

{¶ 70} The sheriff of Wood County shall immediately serve, upon each respondent by personal service, a copy of this writ pursuant to R.C. 2731.08. The clerk of court is also directed to immediately serve upon all other parties a copy of this writ in a manner prescribed by Civ.R. 5(B).

{¶ 71} It is so ordered.

Writ granted.

PIETRYKOWSKI and OSOWIK, JJ., concur.