# IN RE: PEOPLE OF THE VIRGIN ISLANDS, Petitioner

S. Ct. Civ. No. 2009-021

Supreme Court of the Virgin Islands

May 13, 2009

JESSE M. BETHEL, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Petitioner People of the Virgin Islands.*

STEVEN HOGROIAN, ESQ., Kotas & Hogroian, P.C., St. John, USVI, *Attorney for Respondent Basheem Camal Ford.*

DEBRA S. WATLINGTON, ESQ., First Principal Territorial Defender, St. Thomas, USVI, *Attorney for Respondent Jermaine S. Paris.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(May 13, 2009)

PER CURIAM. This matter is before the Court pursuant to a Petition for Writ of Mandamus filed by the People of the Virgin Islands (hereafter "People") requesting that this Court vacate the Superior Court's February 20, 2009 and February 26, 2009 orders denying the People's request to withdraw plea offers made to Basheem C. Ford and Jermaine S. Paris

(collectively "Defendants").[1] For the reasons stated below, we shall grant the People's petition and vacate the Superior Court's orders.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The People, on June 18, 2008, filed a twenty-two count consolidated information against the Defendants, alleging crimes including first degree murder. On January 16, 2009, the People's counsel contacted the Defendants' counsels to inform them that the People were authorized to offer the Defendants a plea bargain of involuntary manslaughter. After the Defendants accepted this offer, the People's attorney notified them that he had offered the opportunity to plea to voluntary manslaughter, rather than involuntary manslaughter. The Defendants disagreed and filed a motion to compel specific performance of the plea agreement to involuntary manslaughter, and the Superior Court held an in-chambers hearing on the matter on January 30, 2009. Though People's counsel reiterated at the hearing that a plea had only been offered for voluntary manslaughter, Ford's counsel submitted a voice mail message in which the People's counsel expressly offered a plea of involuntary manslaughter. The People's counsel acknowledged that he may have misspoken in stating involuntary manslaughter instead of voluntary manslaughter.

The trial court subsequently orally granted the Defendants' motion and ordered specific performance of the plea agreement. In its oral disposition, the trial court, citing *Santobello v. New York*, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971) and *United States v. Moscahlaidis*, 868 F.2d 1357 (3d Cir. 1987), held that "when a prosecutor makes a promise and plea agreement, he must keep that promise" and that "the Government must adhere strictly to the terms of the bargain it strikes with Defendants." Accordingly, the trial court concluded, specific performance was required because the People had "clearly and explicitly made an offer to the parties to plea to involuntary manslaughter." (Trial Tr. vol. 1, 13, 20-21, Jan. 30, 2009.) The People subsequently filed a notice of appeal on February 2, 2009, and on the same day filed a motion requesting that the trial court stay its oral order.[2]

---

[1] Pursuant to title 4, section 32(b) of the Virgin Islands Code, this Court has jurisdiction over original proceedings for mandamus.

[2] It does not appear from the record that the trial court ruled on this request for a stay.

After the People moved the trial court to reconsider its decision, the trial court ordered the parties to submit supplemental briefs on the issue of whether the Defendants detrimentally relied on the People's plea offer in light of *Gov't of the V.I. v. Scotland*, 17 V.I. 623, 614 F.2d 360 (3d Cir. 1980). The parties complied and submitted briefs on the issue. In a February 20, 2009 memorandum opinion and order, the trial court held, citing numerous news reports, that a fair trial was no longer possible for the Defendants because pre-trial publicity tainted the jury, and again ordered specific performance of the plea agreement.[3] On February 26, 2009, the Superior Court entered an order scheduling a change of plea hearing for March 11, 2009. The People submitted an amended notice of appeal on March 3, 2009, and filed a petition for writ of mandamus and motion for a stay pending appeal with this Court on March 9, 2009. In a March 10, 2009 order, this Court granted a partial, temporary stay and allowed the Defendants and the respondent trial judge to file responses addressing the People's appeal, petition for mandamus, and motion for a stay.

## II. DISCUSSION

The People allege in their petition that mandamus relief is appropriate because the Superior Court "unlawfully invade[d] the province of the executive branch pursuant to the separation of power clause and due process clause of the Revised Organic Act of 1954," "violate[d] the specific requirements of Federal Rule of Criminal Procedure 11(c)(1)" by interjecting itself into the plea bargaining process, and ordered specific performance of the plea agreement "pursuant to a clearly erroneous interpretation of the contract principle of 'Detrimental Reliance' based on alleged pre-trial publicity preventing a future fair trial."[4] (Pet. 3-4.) We

---

[3] Interestingly, although the trial court considered for the first time in its analysis the effect of *Scotland*, it nevertheless denied the People's motion for reconsideration on the basis that the People had failed to present any new arguments to demonstrate that the January 30, 2009 order was clearly erroneous. (Mem. Op. at 5.)

[4] The People also allege that "[a] final issue is whether it is an abuse of discretion for a trial court to sanction an Attorney by executing a warrant for contempt of court with a $10,000.00 . . . bail after the attorney had given oral notice of intend [sic] to file an appeal . . . prior to the Courts [sic] scheduled hearing on the same date at 4:00 p.m." (Pet. 5.) This Court denied, on mootness grounds, a previous petition for a writ of mandamus to vacate the bench warrant when the trial court granted the People the relief sought. *See In re Bethel*, S. Ct. Civ.

hold, for the reasons that follow, that the People have met the requirements for mandamus relief.

## A. Legal Standard

■ A writ of mandamus is a drastic remedy which should be granted only in extraordinary circumstances. *In re LeBlanc*, 49 V.I. 508, 516 (V.I. 2008)). To obtain a writ of mandamus, a petitioner must establish that it has no other adequate means to attain the desired relief and that its right to the writ is clear and indisputable. *Id.* at 517. Consequently, we may not issue a writ of mandamus if the People may obtain the relief sought by bringing a direct appeal to this Court. *Id.* Furthermore, "even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Court for the D.C.*, 542 U.S. 367, 380-81, 124 S. Ct. 2576, 159 L. Ed. 2d 459 (2004).

## B. The People Do Not Have a Clear Right to Directly Appeal the Superior Court's Orders

Here, the People have challenged the Superior Court's February 20, 2009 and February 26, 2009 orders both through the instant mandamus action and a separate direct appeal. Accordingly, to properly evaluate whether the People meet the requirements for mandamus relief, this Court must first consider whether this Court has jurisdiction to hear the People's current direct appeal or a potential future appeal.

■ "It is well established that the People cannot appeal a criminal judgment 'unless statutory authority expressly and clearly permits such an appeal.' " *People v. Pratt*, 50 V.I. 318, 321 (V.I. Nov. 14, 2008) (quoting *People v. George*, 49 V.I. 504, 507 (V.I. 2008)). "In the Virgin Islands, title 4, section 33(d) of the Virgin Islands Code provides the People with the statutory authority to appeal certain criminal judgments." *Id.* Although the People did not expressly designate in their notice of appeal which subsection provides the jurisdictional basis for their appeal, it appears that

No. 2009-008 (V.I. Feb. 8, 2009) (order denying petition for mandamus). Furthermore, the record does not indicate that the trial court has formally sanctioned People's counsel or held him in contempt. Accordingly, this issue is not properly before this Court. *See St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 328 n. 8 (V.I. 2007).

the People believe section 33(d)(1) confers this Court with jurisdiction over the matter.[5] This statute reads as follows:

> In a criminal case an appeal by the Government of the Virgin Islands shall lie to the Supreme Court from a decision, judgment, or order of the Superior Court dismissing an indictment or information or otherwise terminating a prosecution in favor of the defendant, as to any one or more counts, or any part thereof, except that no appeal shall lie where the double jeopardy clause of the United States Constitution or the Revised Organic Act prohibits further prosecution.

4 V.I.C. § 33(d)(1). Consequently, for the People to directly appeal the February 20 and February 26, 2009 orders, this Court must find that the Superior Court dismissed all or part of the information or otherwise terminated the prosecution in favor of the Defendants, and that a direct appeal would not subject the Defendants to double jeopardy.

1. *The Superior Court Has Not Dismissed the Information, But May in the Future*

■■ Appellate courts have consistently held that the determination of whether a particular order is appealable rests on its content and substance, not its form or title. *See Hughey v. Gwinnett County*, 278 Ga. 740, 609 S.E.2d 324, 327 (Ga. 2004) ("Whether an order is final and appealable is judged by its function and substance, rather than any 'magic language.' "); *Camp v. E. Fork Ditch Co., Ltd.*, 137 Idaho 850, 55 P.3d 304, 321 (2002) ("Whether an instrument is an appealable order or judgment must be determined by its content and substance, and not by its title."); *People v. Savory*, 309 Ill. App. 3d 408, 722 N.E.2d 220, 223, 242 Ill. Dec. 731 (Ill. Ct. App. 1999) ("The appealability of an order is

---

[5] The People's amended notice of appeal states that it "request[s] an appeal to the Virgin Islands Supreme Court pursuant to . . . 4 V.I.C. §39(c)." (Pet. Ex. 10.) However, the Legislature repealed this statute on October 29, 2004. Nevertheless, the former section 39(c) provides a basis for appeal that is similar to the present section 33(d)(1):

> The United States or the Government of the Virgin Islands may appeal an order dismissing an information or otherwise terminating a prosecution in favor of a defendant or defendants as to one or more counts thereof, except where there is an acquittal on the merits.

4 V.I.C. § 39(c) (repealed 2004).

determined by its substance, not its form."). Thus, while the Superior Court's orders do not purport to dismiss all or part of the information against the Defendants or to otherwise terminate the litigation in their favor,[6] this Court must consider whether those orders nevertheless have the effect of setting aside all or part of the information. *See People v. Thornton*, 137 Cal. App. 4th 241, 39 Cal. Rptr. 3d 887, 891 (Cal. Ct. App. 2006).

■ We find that the Superior Court has not yet dismissed all or part of the information against the Defendants. Although the Superior Court's February 20, 2009 order states that the Defendants are entitled to specific performance of the original plea agreement, the Defendants have not changed their pleas to guilty, and the judge has not yet had the opportunity to inquire as to the voluntariness or factual basis of such a plea agreement pursuant to Superior Court Rule 126 or Rule 11 of the Federal Rules of Criminal Procedure.[7] Likewise, the February 26, 2009 order merely sets a hearing date, and is thus not an appealable order. *See Ryan v. Ryan*, S. Ct. Civ. No. 2009-020, slip op. at 2 (V.I. Mar. 12, 2009) (holding that litigant may not appeal an order setting a status conference). Because it is well established that the ripeness doctrine applies to Virgin Islands local courts, *see V.I. Gov't Hosp. and Health Facilities Corp. v. Gov't*, 50 V.I. 276, 280 (V.I. 2008), this Court does not have jurisdiction to consider the People's March 3, 2009 appeal.

■ But while the People may not, at this stage of the proceedings, obtain appellate review of the trial court's ruling, we must consider whether subsequent events may ripen the prematurely-filed appeal or allow the People to obtain review of the Superior Court's decision as part of a new appeal filed on a future date. *See Harvey v. Christopher*, S. Ct. Civ. No. 2007-115, 2009 WL 331304, at *3 (V.I. Jan. 22, 2009). In the event that the Defendants do not withdraw from the plea agreement prior

---

[6] Since courts have consistently held that even a consummated plea agreement does not terminate the proceedings in favor of the defendant, *see, e.g., Imbergamo v. Castaldi*, 392 F. Supp. 2d 686, 695-96 (M.D. Pa. 2005), it naturally follows that an order granting a defendant the option of specific performance of a plea agreement that has not yet been accepted does not terminate the proceedings in the defendant's favor.

[7] We do not here decide whether all or part of Federal Rule of Criminal Procedure 11 applies to criminal proceedings in the Superior Court in light of Superior Court Rule 126 because the issue has not been briefed by the parties and is not relevant to the disposition of this case. *See St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 328 n. 8 (V.I. 2007).

to the change of plea hearing and the trial judge accepts the plea agreement after conducting an inquiry under Federal Rule of Criminal Procedure Rule 11 or Superior Court Rule 126, the Superior Court — to effectuate its February 20, 2009 order requiring specific performance — will adjudicate the Defendants guilty of involuntary manslaughter and dismiss all other charges contained in the information. Such a future order would have the effect of dismissing all or part of the information. *See Thornton*, 39 Cal. Rptr. 3d at 891; *see also Commonwealth v. Camacho*, 6 N. Mar. I. 498, 501 (N. Mar. I. 2002) (allowing government to appeal order requiring specific performance after trial court has accepted the plea). Accordingly, section 33(d)(1)'s requirement that the trial court dismiss part of the information, though not met at this time, would likely become fulfilled in the future.

## 2. *The Double Jeopardy Clause Would Preclude a Direct Appeal by the People*

Section 33(d)(1) precludes the People from pursuing an appeal of dismissal of part or all of the charges if "the double jeopardy clause of the United States Constitution or the Revised Organic Act prohibits further prosecution." Federal and state appellate courts are split as to the precise moment when jeopardy attaches in the context of a guilty plea. *Compare, e.g., State v. McAlear*, 519 N.W.2d 596, 599 (S.D. 1994) ("In the case of a plea bargain, jeopardy attaches when the court accepts the guilty plea.") (collecting cases) *with State v. Angel*, 132 N.M. 501, 51 P.3d 1155, 1157-59 (2002) ("These cases all support the principle that jeopardy attaches when the court enters a judgment and imposes a sentence on the guilty plea, not when the plea was accepted.") (collecting cases).

However, it is not necessary for this Court to resolve this question at this time, for there is a substantial likelihood that the double jeopardy clause will prevent the People from filing a direct appeal in this case regardless of when jeopardy attaches. Given the procedural posture of this case, it is highly unlikely that the trial court will dismiss any portion of the information until it accepts the Defendants' guilty pleas. Accordingly, if jeopardy attaches at acceptance, the double jeopardy clause would almost certainly prohibit the People from seeking appellate review of the trial court's order requiring specific performance of the plea offer. *See*

*Fransaw v. Lynaugh*, 810 F.2d 518, 523 (5th Cir. 1987) (collecting cases).[8]

■ But the double jeopardy clause would likely preclude a direct appeal by the People even if jeopardy does not attach until the Superior Court issues a sentencing order. Unlike Rule 32 of the Federal Rules of Criminal Procedure, which requires a pre-sentence investigation, restricts a federal court's authority to immediately sentence a defendant without a pre-sentence report prepared by a probation officer to the rare instances where "the information in the record enables it to meaningfully exercise its sentencing authority," and only requires that the court impose sentence "without unnecessary delay," Superior Court Rule 134 mandates that "[s]entence shall be imposed immediately after a defendant . . . has pleaded guilty, unless the court, for good cause shown, shall postpone the imposition of sentence for a period not to exceed 15 days" or "for a period not to exceed 30 days when the court has requested a pre-sentence investigation from the probation officer." Because Superior Court Rule 134 not only permits, but encourages judges to sentence defendants immediately after they plead guilty, it is highly likely that the Superior Court would accept the Defendants' guilty pleas, impose its sentence, and dismiss the remaining parts of the information in a single order or judgement. In such a scenario, the People would lose their opportunity to appeal the trial court's February 20, 2009 order because the double jeopardy clause would prohibit prosecution of the Defendants even if the trial court erred in requiring specific performance. *See People v. Moquin*, 77 N.Y.2d 449, 570 N.E.2d 1059, 1061, 568 N.Y.S.2d 710 (N.Y. 1991) (holding that courts lack inherent authority to vacate plea accepted after erroneous dismissal of first degree murder count because jeopardy attached when judge imposed sentence on lesser charge). Given this situation, where the People have a real possibility of not having a right to appeal the specific performance orders, the People have satisfactorily demonstrated that they have no other adequate means to attain the desired relief. *LeBlanc*, 49 V.I. at 517.

---

[8] *But see Salters v. State*, 52 Wis. 2d 708, 191 N.W.2d 19, 22 (1971) (holding that defendant was only subject to a "single jeopardy" when trial court accepted plea agreement without first ascertaining whether the plea was voluntary or had a factual basis, vacated plea agreement and reinstated complaint prior to sentencing, and then sentenced defendant pursuant to a plea agreement with identical terms after determining voluntariness and factual basis).

## C. The People Have a Clear and Indisputable Right to the Relief Requested

■Although the right to a direct appeal typically precludes mandamus relief, it does not automatically follow that the lack of a right to a direct appeal requires mandamus consideration. *See United States v. McVeigh*, 106 F.3d 325, 333 (10th Cir. 1997). This is particularly true when the government seeks mandamus, for appeals by the government in a criminal case are "exceptional" and "disfavored," and thus "[m]andamus . . . may never be employed as a substitute for appeal in derogation of these clear policies," even if the government does not have a later right to appeal. *Will v. United States*, 389 U.S. 90, 96-97, 88 S. Ct. 269, 19 L. Ed. 2d 305 (1967) (internal quotations and citations omitted). Thus, the People must also demonstrate that their "right to the writ is clear and indisputable." *LeBlanc*, 49 V.I. at 517.

■ A party possesses a "clear and indisputable" right when the relief sought constitutes a "specific, ministerial act, devoid of the exercise of judgment or discretion." *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997). If the purported "ministerial duty" is a judge's duty to issue legally-correct rulings, mandamus is only appropriate "to correct judicial action that is clearly contrary to well-settled law" — specifically, decisions that "ignore[] clear, binding precedent from a court of superior jurisdiction." *State ex rel. Healey v. McMeans*, 884 S.W.2d 772, 774 (Tex. Crim. App. 1994). Here, the People primarily argue that the Superior Court "clearly erred in its interpretation and application of the contract principle of [d]etrimental [r]eliance so as to subvert valid constitutional considerations by deciding that adverse pre-trial publicity after January 30, 2009 mandated a plea agreement." (Pet. 19.) We agree.

■ A criminal defendant does not have a constitutional right to a plea bargain. *See Weatherford v. Bursey*, 429 U.S. 545, 561, 97 S. Ct. 837, 846, 51 L. Ed. 2d 30 (1977). Consequently, the government does not possess a duty to enter into plea negotiations with a defendant. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S. Ct. 663, 668, 54 L. Ed. 2d 604 (1978). Furthermore, because "[a] plea bargain standing alone is without constitutional significance . . . until embodied in the judgment of a court," the government may unilaterally withdraw a plea offer, even if accepted by the defendant, without violating the defendant's

constitutional rights. *Mabry v. Johnson*, 467 U.S. 504, 507, 104 S. Ct. 2543, 2546, 81 L. Ed. 2d 437, 442 (1984). *See also United States v. Norris*, 486 F.3d 1045 (8th Cir. 2007), *cert. denied* 552 U.S. 1105, 128 S. Ct. 881, 169 L. Ed. 2d 739 (2008) ("Therefore, before the guilty plea is accepted [by the court], either party may withdraw from the plea agreement"). This is because a plea agreement, as a unilateral contract, cannot become binding on the parties through the defendant's mere promise of performance but by the defendant's actual performance — a change of plea to guilty. *See Scotland*, 614 F.2d at 365; *see also Camacho*, 6 N. Mar. I. at 502-03 (collecting cases).

■ Nevertheless, a limited exception to this rule exists if "the defendant detrimentally relies on the government's promise." *Scotland*, 614 F.2d at 365; *see also* RESTATEMENT (SECOND) OF CONTRACTS § 90 (1981) (explaining that a promise may become enforceable if the promisee relies on it to his detriment). "Detrimental reliance occurs when '[a] defendant relies upon a prosecutor's plea offer by taking some substantial step or accepting serious risk of an adverse result following acceptance of the plea offer.' " *Camacho*, 6 N. Mar. I. at 503 (quoting *California v. Rhoden*, 75 Cal. App. 4th 1346, 89 Cal. Rptr. 2d 819 (Cal. Ct. App. 1999)). "Reliance may not be shown 'by the mere passage of time,' " and also "may not be shown where the defendant stopped preparing his defense, absent a showing of specific prejudice[,] [n]or may detrimental reliance be shown by the prospect of a longer sentence." *Id.* However, detrimental reliance is present "where the defendant has not yet entered the plea, but has relied on the bargain in such a way that a fair trial would no longer be possible." *Scotland*, 614 F.2d at 365. Nevertheless, because "[n]either party is justified in relying substantially on the bargain until the trial court approves it," appellate courts "have consistently declined to recognize any bases for detrimental reliance by the defendant that would warrant specific performance of the plea agreement on due process or any other grounds." *Norris*, 486 F.3d at 1049 (quoting *United States v. McGovern*, 822 F.2d 739, 744 (8th Cir. 1987)).

■ ■ The trial court, however, did not perform a detrimental reliance analysis at the January 30, 2009 hearing where it issued its oral order requiring specific performance. Rather, the trial court erroneously applied traditional contract law principles to the matter and found that specific performance was required because "this was an oral offer" that "was properly accepted" and "[a] contract was therefore formed between

388

the People and the Defendants with respect to this plea agreement." (Trial Tr., vol. 1, 21.) The trial court did not consider the settled law in this jurisdiction that the People had the unrestricted right to withdraw the plea offer prior to entry of a judgment accepting the plea, absent a finding of detrimental reliance. *See Scotland*, 614 F.2d at 365 (rejecting the holding of *Cooper v. United States*, 594 F.2d 12 (4th Cir. 1979) that a defendant is entitled to specific performance of a withdrawn plea offer). Accordingly, the trial court "ignored clear, binding precedent from a court of superior jurisdiction" when it issued its January 30, 2009 order. *Healey*, 884 S.W.2d at 774.[9]

The Superior Court, subsequent to its order enforcing the agreement, did consider the issue of detrimental reliance in its February 20, 2009 opinion and order denying the People's motion for reconsideration. However, the detrimental reliance analysis should have been made at the date it decided to enforce the agreement. At that time, there was no detrimental reliance by the Defendants, for the only public record of the Defendants' desire to plead guilty was their motion for specific performance, which had not been filed under seal. Furthermore, the January 30, 2009 hearing was held in chambers rather than in open court. Because the Defendants' positions had not changed as a result of the withdrawn plea offer, there was clearly no detrimental reliance by the Defendants at the time the court elected to enforce the plea offer.

 ██ However, the Superior Court, following further research in light of *Scotland*'s requirement that a plea offer may be withdrawn in the absence of detrimental reliance, premised its entire analysis on multiple newspaper articles — published in what the judge characterized as "the most prominent media sources in the Territory" — that were not entered into the record by the parties, and found that "numerous media reports documenting Defendants' desire to plead '[g]uilty' to [i]nvoluntary [m]anslaughter have been reported on major television and radio new[s] programs in the Territory" without identifying the programs. (Sup. Ct.

---

[9] Although the establishment of this Court has changed the relationship between the local Virgin Islands judiciary and the Third Circuit, this Court's creation "did not erase pre-existing case law," and thus "precedent that was extent when [the Court] became operational continues unless and until [the Court] address[es] the issues discussed there." *People v. Quenga*, 1997 Guam 6 ¶ 13 n. 4. Accordingly, decisions rendered by the Third Circuit and the Appellate Division of the District Court are binding upon the Superior Court even if they would only represent persuasive authority when this court considers an issue.

Mem. Op. at 8, Feb. 20, 2009) "It is so well established as not to require discussion . . . that a [trial] court . . . must base its decision on evidence actually in the record of the case and that an appellate tribunal cannot base an adjudication on items of evidence informally offered to the trial court and, though apparently read by it, not made part of the record." *United States ex rel. Collins v. Ashe*, 176 F.2d 606, 606 (3d Cir. 1949). *See also United States v. Bonas*, 344 F.3d 945, 948 (9th Cir. 2003) (reversing trial court's decision ordering mistrial for manifest necessity when no formal record was kept except for trial judge's unsubstantiated observations); *Price Bros. Co. v. Philadelphia Gear Corp.*, 649 F.2d 416, 419 (6th Cir. 1981) ("The fair and impartial administration of justice demands that facts be determined only upon the evidence properly presented on the record."); *Moore v. Russell*, 294 F. Supp. 615, 621 (E.D. Tenn. 1968) (finding that due process is violated when "[a]ll the evidence forming the foundation for the exercise by the trial judge of judicial discretion emanated from outside the record of the trial."). Given its duty to base its decision solely on record evidence, the trial court clearly acted contrary to well-settled law by rendering an opinion as to the fairness of a future trial based exclusively on evidence not properly before it.

 Furthermore, even if the trial court could take judicial notice of these media reports,[10] the United States Supreme Court has consistently held that the mere fact that a criminal case has garnered media attention prior to trial, without more, is insufficient for a finding that pre-trial publicity has tainted the jury pool. *See Patton v. Yount*, 467 U.S. 1025, 1035, 104 S. Ct. 2885, 2891, 81 L. Ed. 2d 847 (1984) ("The relevant question is not whether the community remembered the case, but whether the jurors . . . had such fixed opinions that they could not judge impartially the guilt of the defendant." (citing *Irvin v. Dowd*, 366 U.S. 717, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961))); *Murphy v. Florida*, 421 U.S. 794, 799, 95 S. Ct. 2031, 2036, 44 L. Ed. 2d 589 (1975) (explaining that juror exposure to media coverage does not presumptively deprive defendant of due process, and court must therefore consider "totality of circumstances."). The Third Circuit has held that, to determine whether the jury pool has been tainted to such an extent that selection of a fair and

[10] The record does not indicate that the trial judge took judicial notice of the newspaper articles or the television and radio broadcasts, much less the basis of such judicial notice. *See* 5 V.I.C. § 791.

impartial jury is no longer possible, a trial court must, "at the very least . . . conduct[] an immediate *voir dire* inquiry to determine if the jurors had read the offensive articles and, if they had, whether they could nevertheless render a fair and true verdict." *United States ex rel. Greene v. New Jersey*, 519 F.2d 1356, 1357 (3d Cir. 1975). *See also Flamer v. Delaware*, 68 F.3d 736, 755 (3d Cir. 1995). Such a *voir dire* inquiry is necessary because "the trial judge [is] in no position to evaluate . . . the jurors' . . . impartiality" if the judge "fail[s] to ascertain whether the jury had been exposed to extra-record information and the nature of that information." *Gov't of the V.I. v. Dowling*, 814 F.2d 134, 141 (3d Cir. 1987). In other words, "clear indications of juror partiality on the record" are required for a finding that a defendant cannot obtain a trial by an impartial jury under the "totality of the circumstances" test. *United States v. De Peri*, 778 F.2d 963, 972 (3d Cir. 1985).

██ ██ In addition, it is well established that "a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity." *United States v. Scarfo*, 263 F.3d 80, 90 (3d Cir. 2001) (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 378, 99 S. Ct. 2898, 61 L. Ed. 2d 608 (1978)). The Virgin Islands Code authorizes "a judge of the Superior Court . . . with the approval of the presiding judge," to "transfer any action or proceeding pending in one judicial division to the other judicial division for hearing and determination" if such a change in venue is "in the interest of justice." 4 V.I.C. § 78. The United States Supreme Court has held that, "where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity." *Sheppard v. Maxwell*, 384 U.S. 333, 363, 86 S. Ct. 1507, 1522, 16 L. Ed. 2d 600 (1966). Thus, even if the trial court could have properly considered evidence outside of the record and found that pre-trial publicity prejudiced the Defendants, it was still obligated to employ less drastic curative measures, such as a continuance or change of venue, prior to ordering the extreme remedy of specific performance of a withdrawn plea offer.[11]

---

[11] We note that the trial judge found that "[t]he aforementioned articles appear[ed] in the Virgin Islands Daily News, the St. Thomas Source, and the St. John Source," and that these publications were "three (3) of the most prominent media sources in the Territory." (Mem. Op. at 8.) Accordingly, the trial judge's findings would imply that the Judicial District of St.

██ ██ The Superior Court acted contrary to clear, binding precedent from the United States Supreme Court and the Third Circuit when it premised its decision on evidence not in the record and concluded, without considering other curative measures such as a change of venue and before jury selection had even begun, that pre-trial publicity tainted the jury pool to such an extent that the Defendants could no longer obtain a fair trial.[12] Accordingly, the People have demonstrated a clear and indisputable right to the relief they have requested. *See Healey*, 884 S.W.2d at 774.[13]

---

Croix experienced a lesser degree of prejudicial pre-trial publicity than the Judicial District of St. Thomas-St. John.

Furthermore, this Court notes that the headlines of the three newspaper articles the trial court cites in its opinion as examples of prejudicial pre-trial publicity — "Prosecutor Released After Getting Jailed for Being 10 Minutes Late," "Kendall Jails Tardy Assistant Attorney General," and "Judge Releases Prosecutor" — indicate that the focus of the media coverage in the instant case was not the underlying crime, but the trial court's decision to issue an arrest warrant for the People's counsel due to his failure to appear at the change of plea hearing originally scheduled for February 2, 2009. Significantly, the January 30, 2009 hearing had not occurred in open court, but was an in-chamber proceeding to which the media did not have access. Accordingly, it would appear that the publicity surrounding this case that resulted in the public disclosure of the Defendants' intent to plead guilty stems from the issuance of the warrant and the subsequent arrest and eventual release of People's counsel, and not any improper attempt by the People to publicize the Defendants' desire to plead guilty prior to trial.

[12] While not addressed by the trial court in its opinion, we note that any statements the Defendants may have made during the course of plea negotiations, as well as the fact that they attempted to plead guilty to involuntary manslaughter, would not be admissible against the Defendants at trial. Although title 5, section 892 of the Virgin Islands Code, which mandates that "[e]vidence that a person has, in compromise or from humanitarian motives furnished or offered or promised to furnish money, or any other thing, act or service to another who has sustained or claims to have sustained loss or damage, is inadmissible to prove his liability," does not expressly establish a privilege for offers to compromise with the government in criminal cases, the United States Supreme Court has held that such evidence is inadmissible as substantive evidence of a defendant's guilt even in the absence of a rule or statute expressly prohibiting its admission. *See Kercheval v. United States*, 274 U.S. 220, 225, 47 S. Ct. 582, 583, 71 L. Ed. 1009 (1927); *see also* FED. R. CRIM. P. 11(f) (stating that the admissibility of statements made during the course of plea discussions are governed by FED. R. EVID. 410, which prohibits admission of such statements). Consequently, the Defendants' acceptance of the withdrawn plea offer would not prejudice the Defendants by resulting in additional evidence of guilt being introduced at trial.

[13] Because we conclude that the People have a clear and indisputable right to the requested relief on this ground, it is not necessary to consider the other purported errors the People raised in their petition.

## D. A Writ of Mandamus is Appropriate Under the Circumstances

Even though the People have demonstrated that there is no other adequate means to obtain the relief sought and that its right is clear and indisputable, the decision to grant mandamus relief nevertheless rests in the discretion of this Court. *See LeBlanc*, 49 V.I. at 517. To determine whether a writ of mandamus is appropriate under the circumstances, we consider factors including, but not limited to, the public interest, the importance or unimportance of the question presented, and equity and justice. *See Hunter v. Britten*, 180 Ohio App. 3d 755, 769, 907 N.E.2d 360 (Ohio Ct. App. 2009); *Savage v. Third Judicial Dist. Court*, 200 P.3d 77, 81 (Nev. 2009); *Borja v. Miles*, D.C. Civ. No. 85-0081A, 1986 WL 68917, at *4 (D.Guam App. Div. Oct. 22, 1986); *Garner v. City of Tulsa*, 651 P.2d 1325, 1329 (Okla. 1982).

We find that mandamus relief is appropriate in this case. The Legislature, in granting this Court the authority to issue "remedies to protect its appellate jurisdiction," 4 V.I.C. § 32(b), has tacitly found that preserving a litigant's right to appeal to this Court serves the public interest. Since the People request this Court to resolve an important issue that is a pure question of law that this Court would have jurisdiction to review under section 33(d) if not for the possibility that appellate review may be foreclosed by the court simultaneously accepting the pleas, sentencing the Defendants and dismissing the information, granting a writ of mandamus clearly furthers the public interest and assists in the administration of justice. *See Ohio v. Johnson*, 467 U.S. 493, 502, 104 S. Ct. 2536, 81 L. Ed. 2d 425 (1984) (explaining that a defendant "should not be entitled to use the Double Jeopardy Clause as a sword to prevent the State from completing its prosecution.").

Likewise, the right of the executive branch to exercise its prosecutorial discretion to withdraw a plea offer that has not yet been accepted by a trial court furthers both the public interest and the interests of justice. The United States Supreme Court has recognized that plea bargaining is an "important component[] of this country's criminal justice system" that benefits the defendant, the government, the public, and the judiciary. *Blackledge v. Allison*, 431 U.S. 63, 71, 97 S. Ct. 1621, 1627, 52 L. Ed. 2d 136 (1977); *Santobello*, 404 U.S. at 260, 92 S. Ct. at 498

("Properly administered [plea bargaining] is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and Federal Government would need to multiply by many times the number of judges and court facilities."). However, as the Third Circuit recognized in *Scotland*, compelling the People to specifically perform an agreement that has not been accepted by the trial court will result in "either a delay in bargaining or fewer plea proposals," with "a consequent diminished savings of prosecutorial and judicial resources" as well as diminishing "the advantages of quick disposition and quick punishment." *Scotland*, 614 F.2d at 364.

 Public interest concerns are further exacerbated in the present case, for unlike *Scotland*, where the government altered a plea to add a new condition, the People contend that the initial offer to the Defendants was made in error and a factual basis does not exist for a plea of involuntary manslaughter. Because the information does not contain a count for involuntary manslaughter, the People contend that to comply with the Superior Court's order it will have to file a superseding information that includes an involuntary manslaughter charge. Since Superior Court Rule 121 requires that an information contain "a written statement of the essential facts constituting the offense charged" and compels that it "be made upon oath," this Court's refusal to exercise its discretion to issue a writ of mandamus would effectively require the People's counsel to choose between filing a document with the Superior Court that he believes contains a false statement of facts or stand in contempt of the trial court's order mandating the filing of a superseding information. *See Alberta Gas Chemicals, Ltd., v. Celanese Corp.*, 650 F.2d 9, 13 (2d Cir. 1981) ("The public interest in preventing perjury is obvious."). Consequently, this Court shall exercise its discretion to grant the People's petition for a writ of mandamus.

## III. CONCLUSION

Due to the unique procedural posture of this case, the People do not have an adequate means of obtaining review of the Superior Court's February 20, 2009 order. Furthermore, the People have demonstrated that their right to the requested relief is clear and indisputable because the February 20, 2009 order is contrary to well-settled law. Because the

public interest and other considerations strongly support mandamus relief, this Court shall issue a writ of mandamus reversing the Superior Court's February 20, 2009 order and vacating the February 26, 2009 order as moot.[14]

---

[14] Because this Court grants the People's petition for a writ of mandamus, the People's motion for a stay of proceedings pending this Court's consideration of its petition must be denied as moot.