# DANIEL PICHIERRI, Appellant/Defendant
## v.
# PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff

S. Ct. Crim. No. 2011-0061

Supreme Court of the Virgin Islands

June 25, 2013

517

SHAWN E. MAYNARD-HAHNFELD, ESQ., Law Offices of Desmond L. Maynard, St. Thomas, USVI, *Attorney for Appellant.*

PAMELA R. TEPPER, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(June 25, 2013)

HODGE, *Chief Justice.* Daniel Pichierri appeals from an August 11, 2011[1] Judgment and Commitment of the Superior Court of the Virgin Islands, adjudging him guilty of three counts, including assault in the third degree, disturbance of the peace, and simple assault.[2] Pichierri was also found guilty and convicted of "intimidation" on the basis of the victim's race. 14 V.I.C. § 707(a). In its Judgment and Commitment, the court merged the assault in the third degree and simple assault convictions. For the reasons that follow, we vacate the Judgment and Commitment, remand the case to the Superior Court, and direct specific performance of the plea offer.

---

[1] The Superior Court signed the Judgment and Commitment on August 10, 2011, and it was entered on the docket and issued it to the parties on August 11, 2011. *See* V.I.S.CT.R. 5(b)(6) ("A judgment or order is entered within the meaning of this subdivision when it is entered on the criminal docket.").

[2] Respectively, V.I. CODE ANN. tit. 14, §§ 297(2), 11(a), 707(a); §§ 622(1), 11(a), 707(a); and §§ 292, 299(2), 11(a). In its Judgment and Commitment, the court merged the assault in the third degree and simple assault convictions. On each of his two remaining convictions, Pichierri was sentenced to three years of incarceration, with two of those years suspended, and with each of those sentences to run concurrently. He was also directed to pay a $1000 fine, $75 in court costs, and was found "jointly and severally liable for restitution" in the amount of $350.53 to be paid to the victim.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

Daniel Pichierri and his three co-Defendants[3] — Bruce Meyer, Rebecca Mae Wedin, and Robert Cannon — travelled to Lindbergh Beach in St. Thomas, Virgin Islands, on September 3, 2010, to drink, relax and sleep overnight. In the early morning hours of September 4, 2010, Rasheel Charles, an African-American, arrived at the beach. He came to the beach to swim and to smoke before the sun rose. However, some time after he arrived, he encountered Pichierri, Meyer, Wedin and Cannon. Charles had known Pichierri for some years. (J.A. 752-53.) For reasons disputed below,[4] an argument broke out between Pichierri, Meyer and Charles. Charles testified that Meyer told him to "get the f*** out of here, you f***ing monkey." (J.A. 658.) Charles also testified that Meyer blocked his route, allegedly bragging that Meyer was a "thoroughbred German," and would throw Charles in the ocean. (J.A. 660.) Pichierri then told Charles that Meyer was "ignorant" and a "psycho," and advised Charles to leave in order to protect himself. (J.A. 661, 754.) As Charles started to leave, Meyer began to throw rocks at him. (J.A. 662.)

Charles left the area and went swimming, but returned for his clothes. Meyer then told Charles that it had been a long time since he "caught a monkey." (J.A. 665-66.) Charles tried to get past Meyer, but Meyer placed him in a chokehold and then punched him in his head and his body. A fight ensued with Charles returning punches to Meyer's head and body. (J.A. 668.) During the fight, Pichierri intervened and hit Charles "with a rock behind" his head. (*Id.*) According to Charles, he escaped from Meyer's grasp and rushed at Pichierri. (J.A. 700.) Pichierri and Charles began to hit each other with sticks. (J.A. 701.) Finally, Charles ran away towards the road, and only returned when he heard the police arrive. (J.A. 708-09.) The police took Charles to the hospital, where he was treated for about fifteen minutes for a small laceration behind his ear with a glue form of liquid stitches. (J.A. 711, 733.) He denied having any pain or any other injury. (J.A. 816.)

---

[3] None of Pichierri's co-Defendants have joined in this appeal.

[4] Defendants' argument below was that Charles approached Wedin while she was sleeping, and continued to bother her after Defendants asked him to stop. Charles testified that he mistook her for a woman he knew who owed him money for drugs. (J.A. 658.)

In a Fourth Amended Information, the People charged Pichierri with "Third Degree Assault-Intimidation," "Disturbance of the Peace-Intimidation," and Simple Assault.[5] At his September 23, 2010 arraignment, Pichierri pleaded not guilty to all of the charges.

On January 26, 2011, the People extended a written plea offer to Pichierri, pursuant to which he would plead guilty to simple assault and offer an apology to the victim at sentencing and, in return, all the other charges would be dismissed. Pichierri accepted the offer, and, upon a motion by the People, the court conducted a change-of-plea hearing on February 11, 2011. At the hearing, the attorney for the People indicated to the court that he had discussed the plea agreement with the victim a month before the hearing, but had not informed the victim of the specific terms of the agreement. (J.A. 92.) The court interjected, asking "You didn't tell him what it was? These are some deep and serious charges here . . . . when you start dealing with hate crimes and trivializing [them.] . . . . Now you have trivialized it and not even told the complainant, and I have problems with that. I have big problems with that." (J.A. 92-93.) In response, counsel for the People reiterated that he had been in touch with the victim, but ultimately counsel maintained that "this is a prosecutorial decision that we've made, and this is where it is. Unfortunately, this is our decision, Your Honor." (J.A. 94.) Ultimately, the court indicated that it would "accept" that decision. (*Id.*) During the entire colloquy, Pichierri was present and witnessed the People strongly emphasize that the plea agreement represented their considered prosecutorial position, and he also heard the People express their intent to go forward with the agreement despite the concerns expressed by the court. (*Id.*)

The court engaged in a full *voir dire* with Pichierri, and advised him of his rights. The judge requested a proffer from the People regarding the evidence they could present to support the conviction. Pichierri allocuted on the record that the People's proffer was correct and he then pleaded guilty to simple assault. (J.A. 119.) The court tentatively set the matter down for sentencing on March 16, 2011, but indicated that it would

---

[5] The People combined Pichierri's charge for violating the third-degree assault statute with his charge of violating the intimidation statute. Similarly, they combined his disturbance-of-the-peace charge with another intimidation charge. The trial court repeated this charging arrangement in its Judgment and Commitment.

withhold its acceptance of the plea until it reviewed the victim's medical bills and other records. (J.A. 120.)

On February 14, 2011, just three days after the change-of-plea hearing, and after significant negative publicity concerning the People's plea offer, the People moved to withdraw the plea agreement. Pichierri filed an opposition to the motion and the court held a hearing on this motion on March 16, 2011, and heard more argument on the matter at a status conference on April 1, 2011. On April 29, 2011, the Court granted the People's motion to withdraw the agreement. (J.A. 352-55.) In its Order, the court noted that it was "aware that this matter has been highly publicized," and that it did not "discount the reported adverse nature of the negative publicity disseminated throughout the community regarding the [d]efendants," but found that this was insufficient to constitute "detrimental reliance," without which, it concluded, it had to allow the People to withdraw from the plea agreement. (J.A. 353.)

The case proceeded to trial, which began on June 6, 2011. On June 9, 2011, the jury found Pichierri guilty of assault in the third degree, disturbance of the peace, and simple assault. Each of these convictions encompassed an intimidation charge relating to bias crimes. When the trial court entered a judgment of conviction on August 11, 2011, it merged the assault in the third degree and simple assault convictions. Pichierri filed a timely notice of appeal on July 26, 2011.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4, § 32(a). Because the Superior Court's August 11, 2011 Judgment and Commitment constitutes a final judgment, this Court possesses jurisdiction over Pichierri's appeal. *See, e.g., Browne v. People*, 56 V.I. 207, 216 (V.I. 2012) (in a criminal case, a written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment for purposes of 4 V.I.C. § 32(a)); *Melendez v. People*, 56 V.I. 244, 251 (V.I. 2012) (same).

The standard of review for this Court's examination of the Superior Court's application of law is plenary, while the trial court's findings of

fact are reviewed for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007); *see also People v. John*, 52 V.I. 247, 255 (V.I. 2009) (quoting *United States v. Shields*, 458 F.3d 269, 276 (3d Cir. 2006)), *aff'd* 654 F.3d 412, 55 V.I. 1324 (3d Cir. 2011). Where, as here, a defendant requests that the court compel specific performance of a plea agreement, we review the trial court's decision to deny such a request for abuse of discretion. *See United States v. Shannahan*, 135 Fed. Appx. 253, 256 (11th Cir. 2005); *United States v. Anthony*, 93 F.3d 614, 616 (9th Cir. 1996).

## B. Sufficiency Challenge

■ Pichierri challenges the sufficiency of the evidence presented to support each of his convictions, as well as to support the intimidation charge.[6] Because we will remand for specific performance of the plea agreement pursuant to which Pichierri will be adjudged guilty of the simple assault charge only, we need not address the sufficiency of the evidence as to his other convictions for assault in the third degree, intimidation and disturbance of the peace.[7] *See Richardson v. United States*, 468 U.S. 317, 323, 104 S. Ct. 3081, 82 L. Ed. 2d 242 (1984) (noting that an appellate court is not always required to reach the merits of a sufficiency challenge, and applying this principle to a case of an appeal after a mistrial caused by a hung jury). *Cf. Gov't of the Virgin Islands v. Ambrose*, 453 Fed. Appx. 157, 160 (3d Cir. 2011) (indicating that courts should address sufficiency arguments on their merits, rather than remanding for a new trial, where acquittal for insufficient evidence will afford greater relief than a new trial, but not addressing the situation of a remand for specific performance of a plea agreement).

■ We conclude that the People presented sufficient evidence at trial to support Pichierri's conviction for simple assault. To prove this charge

---

[6] Pichierri made a Rule 29 Motion during the trial and upon conclusion of the case, and moved for Judgment of Acquittal after the trial concluded. (J.A. 1039, 1600-31.) Each of these motions was denied.

[7] Consequently, we expressly do not reach the question of whether the People properly charged intimidation together with assault in the third degree in Count II, and whether they properly combined intimidation with disturbance of the peace in Count III. Furthermore, we do not reach the question of whether the trial court properly sentenced Pichierri to three years imprisonment on the disturbance of the peace conviction, which is a misdemeanor. 14 V.I.C. § 622(1).

pursuant to section 299(2) of title 14, the People had to present enough evidence to establish beyond a reasonable doubt that Pichierri used "unlawful violence upon [Charles] with intent to injure" him. *Boston v. People*, 56 V.I. 634, 641 (V.I. 2012) (interpreting 14 V.I.C. § 299(2)). Here, there was sufficient evidence presented on these elements. Charles testified that Pichierri hit him with a rock behind his head (J.A. 668), and a witness — Edrick Martin — testified that he saw Pichierri and Meyer beating Charles with sticks. (J.A. 964, 967.)

Pichierri requests this Court to find that there was insufficient evidence that his actions were *unlawful*; that is, although the jury found that the government disproved self-defense beyond a reasonable doubt, he nevertheless asks us to consider the record and determine that the government failed to meet its burden. Pichierri cites testimony by an eyewitness, Cherri Carty, that Pichierri was not armed when Charles hit him in the head. He also references Charles's testimony that Pichierri was running away when Pichierri was hit. However, Carty admitted she may not have seen the beginning of the fight, and Charles testified that he was struck first and was just defending himself thereafter. Furthermore, the jury could have found that the testimony provided by Defendants' witnesses lacked credibility. Finally, the difference in the severity of the injuries between Charles on the one hand, and Meyer and Pichierri on the other, does not necessarily indicate whether or not Pichierri was acting in self-defense; it may just demonstrate who got the better of the fight. Consequently, we find that there was sufficient evidence presented to sustain the simple assault conviction.

## C. The Withdrawal of the Plea Offer

Pichierri argues that the court erred by granting the People's request to withdraw from the plea agreement after he had already accepted the plea offer and performed his undertaking by pleading guilty on the record. In response, the People argue that they can withdraw from a plea agreement at any time until the court accepts it, and because the court had not yet accepted the plea agreement when they moved to withdraw from it, the court did not err.

Both parties argue that this Court's decision in *In re People*, 51 V.I. 374, 387 (V.I. 2009), controls the question presented here. In its Motion to Withdraw the Plea Agreement, the People relied heavily on *In re People*, emphasizing this Court's statement in that case that a " 'plea

523

bargain standing alone is without constitutional significance until . . . embodied in the judgment of a court,' " and so " 'the government may unilaterally withdraw a plea offer, even if accepted by the defendant, without violating the defendant's constitutional rights.' " 51 V.I. at 387-88 (quoting *Mabry v. Johnson*, 467 U.S. 504, 507, 104 S. Ct. 2543, 81 L. Ed. 2d 437 (1984)). (J.A. 124.) In *In re People*, the prosecutor telephoned defendants' counsel and offered a plea bargain in which the defendants would plead guilty to involuntary manslaughter. Defendants' counsel returned the prosecutor's call and accepted the plea offer. However, before the court could hold a change-of-plea hearing, the People informed defendants' counsel that they had offered a plea of *voluntary*, not involuntary, manslaughter. When this representation was contradicted by evidence of the People's initial offer in a recorded voicemail message propounded by the defendants, People's counsel stated that he had misspoken when he offered involuntary manslaughter. The trial court granted the defendants' motion for specific performance of the involuntary manslaughter plea offer. However, this Court reversed because the government retained the prosecutorial discretion to unilaterally withdraw their offer until the defendants had pleaded guilty and the court had accepted such plea,' in the absence of detrimental reliance. 51 V.I. at 393-94. Relying on *In re People*, the trial court in this case ruled that the government had an "unrestricted right to withdraw a plea offer prior to the entry of a judgment accepting the plea." (J.A. 352.) While the court acknowledged that there is a detrimental reliance exception to this rule, its detrimental reliance analysis focused solely on the negative publicity surrounding the Defendants' guilty plea. (J.A. 353.) Ultimately, the court found that Pichierri did not demonstrate that he detrimentally relied on the plea offer, and it permitted the People to withdraw from the plea agreement. *(Id.)*

While *In re People* correctly provides the general rule regarding the constitutional rights and obligations surrounding plea agreements, the facts of that case are quite different from the facts presented in this case. Unlike in *In re People*, in this case there was more than a verbal acceptance of an oral plea offer; instead, in this case the People's counsel gave Pichierri a written plea offer, which Pichierri and his attorney signed

to acknowledge that he accepted the offer.[8] (J.A. 70.) The People subsequently moved the court for a change-of-plea hearing "because the Defendant and the prosecution have entered into a plea agreement." (J.A. 70.) On February 11, 2011, the trial court conducted a change-of-plea hearing. The People stated the terms of the agreement for the record (J.A. 91), and made a proffer. Pichierri was placed under oath. (J.A. 98-99.) The court conducted a thorough *voir dire* of Pichierri and advised him of his constitutional right to a trial and of those rights he would be waiving by pleading guilty. (J.A. 99-119.) Pichierri acknowledged the correctness of the People's proffer in support of the charge, the clerk read the simple assault charge to Pichierri and asked how he pleaded, and in the most significant departure from the facts of *In re People*, the defendant stated on the record that he pleaded "guilty." The facts of this case, therefore, differ in important respects from the facts of *In re People*. Consequently, although the principles stated in *In re People* continue to guide our analysis, the result in this case is not dictated by the result in *In re People*.

■ The principles stated in *In re People* are clear. In that case, we recognized the limited "detrimental reliance" exception to the general rule that the government may unilaterally withdraw its offer at any time until the court accepts the plea. This exception applies "if 'the defendant detrimentally relies on the government's promise,' " *In re People*, 51 V.I. at 388 (quoting *Gov't of the V.I. v. Scotland*, 614 F.2d 360, 365, 17 V.I. 623 (3d Cir. 1980)), which, we noted, involves the defendant " 'taking some substantial step or accepting serious risk of an adverse result following acceptance of the plea offer.' " *In re People*, 51 V.I. at 388 (quoting *Commonwealth v. Camacho*, 2002 MP 21, 6 N. Mar. I. 498, 503 (N. Mar. I. 2002)) (internal quotation marks omitted). We did not find

---

[8] The offer proposed by the People and accepted and signed by Pichierri read as follows:

The Government hereby offers the following:

1. The Defendant agrees to plead guilty to Count Nine of the Information, which consists of simple assault in violation of V.I. CODE ANN. tit. 14, § 292, 299(2). In addition, the Defendant will apologize to Rasheed Charles, at sentencing.

2. In return, the Government will dismiss the remaining counts of the Information against Daniel Pichierri and the parties will recommend that the Defendant Pichierri be sentenced to time-served.

Acceptance of the above-stated plea offer must be done in writing, **BY SIGNING THIS LETTER IN THE SPACE PROVIDED BELOW** and returning it to this office.

(J.A. 70.) Pichierri and his counsel signed the offer on February 4, 2011.

detrimental reliance in *In re People*; however, in that case the defendants had orally accepted the People's oral plea offer, but had not actually pleaded guilty. *Id.* at 388 (indicating that the plea offer was an oral one).

■ There is a distinction between a defendant who merely agrees to accept a plea offer, and one who, relying on that offer, fully performs under the agreement. The latter defendant has, by the very act of pleading guilty under oath in open court, taken a substantial step and detrimentally relied on the government's promise. While "the analogy may not hold in all respects [because of the necessary involvement of the court], plea bargains are essentially contracts." *Puckett v. United States*, 556 U.S. 129, 137, 129 S. Ct. 1423, 173 L. Ed. 2d 266 (2009). The agreements are "unilateral contracts" because "consideration is not given for the prosecutor's promise until the defendant actually enters his plea of guilty." *Gov't of the V.I. v. Scotland*, 614 F.2d 360, 364, 17 V.I. 623 (3d Cir. 1980); *accord In re People*, 51 V.I. at 387. Once the defendant performs, however, by not only accepting the plea agreement, but by actually standing sworn before a court and declaring his guilt on the record by his guilty plea, the contract is no longer unilateral. *See Scotland*, 614 F.2d at 365 ("[The] basic estoppel principle was recognized by the [U.S. Supreme] Court in *Santobello*; when a defendant pleads guilty in reliance on an agreement with the prosecutor, that promise must be fulfilled."); *State v. Collins*, 300 N.C. 142, 265 S.E.2d 172, 176 (1980) ("The consideration given for the prosecutor's promise is not the defendant's corresponding promise to plead guilty, but rather is defendant's *actual performance* by so pleading.") (emphasis added). For this reason, other courts have stated that once a defendant pleads guilty, the government may not withdraw from the plea agreement. *See, e.g., Shields v. State*, 374 A.2d 816, 820 (Del. 1977) ("We hold that the State may withdraw from a plea bargain agreement at any time prior to, *but not after*, the actual entry of the guilty plea by the defendant or other action by him constituting detrimental reliance.") (emphasis added); *accord State v. Dillon*, 224 Neb. 503, 398 N.W.2d 718, 720 (1987) (same); *Collins*, 265 S.E.2d at 176 (same).

██ ██ We find that this case presents the prototypical example of a defendant taking a substantial step in reliance on the People's plea offer.[9] Unlike in *In re People*, in this case Pichierri stood in open court and pleaded guilty under oath, doing everything he promised under the plea agreement. *Cf. In re People*, 51 V.I. at 389 (finding no detrimental reliance because "the Defendants' positions had not changed as a result of the withdrawn plea offer," particularly because the only evidence of their desire to plead guilty was a motion for specific performance and discussions about the agreement were held in chambers, not open court). Pichierri undoubtedly relied to his detriment on the People's plea bargain. It was that plea agreement which induced him to swear that he was guilty of simple assault, an admission which certainly caused him to change his previous not guilty plea to one of guilty, and which fanned the flames of resentment in the community towards him.

██ ██ Even more significantly, Pichierri was advised that while statements made at his change of plea hearing could not be used against him should the plea not be accepted by the court, such statements *could* be used against him in a case for perjury. (J.A. 111.) Despite such admonition, Pichierri proceeded to admit his guilt and entered his guilty plea on the record. *See People v. Fisher*, 657 P.2d 922, 928-29 (Colo. 1983) (stating that it is the intentional relinquishment or waiver of a constitutional right that gives rise to an accused's due process claim for enforcement of a government promise). After the government withdrew its plea offer and the matter went to trial, Pichierri elected not to testify in his own defense, a course of action perhaps designed to avoid future prosecution for perjury, a conviction for which Pichierri could have been sentenced to ten years imprisonment.[10] 14 V.I.C. § 1541 (providing a

---

[9] We agree with the United States Court of Appeals for the Ninth Circuit, which has held that where there is a showing of detrimental reliance, the government may be bound before the court accepts the plea. *United States v. Kuchinski*, 469 F.3d 853, 858 (9th Cir. 2006). *But see United States v. Norris*, 486 F.3d 1045, 1049 n.4 (8th Cir. 2007) (stating that the court's acceptance "is the point at which detrimental reliance becomes possible").

[10] Undoubtedly, this potential perjury admonition resonated with Pichierri and his counsel, and may have played a role in his subsequent decision not to testify in his own defense at trial. However, regardless of whether Pichierri testified, the trial record indicates that he had already met with a probation officer for the purposes of preparing a pre-sentence report before the People withdrew their offer. (J.A. 286-87.) He may well have made statements incriminating himself at that meeting. Subsequently, the People could have moved the court to un-

ten-year maximum incarcerative penalty for perjury).[11] Clearly, his plea was a "substantial step" in performance of the agreement; moreover, he accepted a "serious risk of an adverse result" as a consequence of that plea. 51 V.I. at 388. Consequently, we hold that Pichierri detrimentally relied on the People's plea bargain, and that the trial court abused its discretion in ruling to the contrary.[12]

Having decided that Pichierri is entitled to some relief as a result of his guilty plea, we must determine what remedy is appropriate. At the time the People moved to withdraw their plea offer, the trial court had not yet decided whether it would accept Pichierri's guilty plea. Rule 126 of the Superior Court Rules gives the court discretion to accept or reject a plea once it is entered by the defendant. SUPER. CT. R. 126. ("Where a plea of guilty is entered, the court may hear the witnesses in support of the complaint prior to judgment and sentence, and after such hearing, may, *in its discretion*, refuse to accept the plea.") (emphasis added). Here, the trial court expressed some reservations at the change-of-plea hearing because it had not yet seen evidence that the victim's injuries were indeed minor, as counsel for the People had represented. (J.A. 120, 311.) Later, during

---

seal the report for the purposes of a perjury prosecution, and any such statements could have been used against him. It follows, then, that if Pichierri made any statements to the probation officer regarding the incident, he detrimentally relied on the People's offer when he willingly cooperated in the preparation of the pre-sentence report.

[11] Notably, Pichierri's convictions for assault in the third degree, disturbance of the peace, and intimidation together carried a maximum incarcerative penalty of ten years and ninety days. Had Pichierri also exposed himself to a perjury conviction by testifying, his maximum potential sentence would have nearly doubled to twenty years and ninety days. See 14 V.I.C. § 297(2) (providing a five-year maximum jail term of five years for assault in the third degree); § 622(1) (mandating a maximum ninety-day incarcerative sentence for disturbance of the peace); § 3 (providing a five-year maximum sentence for all felonies, such as intimidation, that do not provide a specific term of imprisonment).

[12] "An abuse of discretion 'arises only when the decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.' " *Stevens v. People*, 55 V.I. 550, 556 (V.I. 2011) (quoting *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003)). Here, the court performing the detrimental reliance analysis in its Opinion did not consider the effect the plea would have on Pichierri's ability to take the stand in his own defense, nor did it draw a sufficient distinction between the facts of *In re People*, which involved publicity surrounding the defendants' desire to enforce a plea offer, and the facts of this case, which involve a defendant fully performing under the agreement by standing in open court and declaring his guilt. While the court had recognized, during an earlier hearing on the Motion to Withdraw, the distinctions between this case and *In re People* (J.A. 305-09), it apparently — and perhaps understandably — felt constrained by *In re People*'s ruling in the context of a different set of facts.

a hearing on the Motion to Withdraw the Plea Offer, the trial judge reminded the People that she had simply been waiting for the medical records, and "[i]f I see it, and I see that it is consistent with what you're saying, that the victim had minor injuries, why should not I have accepted it nunc pro tunc?" (J.A. 312.)

 Consequently, it is relatively clear that the court intended to accept Pichierri's guilty plea so long as there was evidence that the victim's injuries were indeed minor. That evidence was presented at trial. The medical records for Charles, the victim, established that he had suffered a laceration on the ear, and received a form of liquid stitches similar to glue. (J.A. 811.) By his own admission, he was at the hospital for only about fifteen minutes (J.A. 733), and he denied being in pain or having any other injury. (J.A. 816.) He did not receive any tests or other treatment, aside from a tetanus shot. (J.A. 812, 817.) Therefore, based on this evidence, there is no reason to believe that the trial court would have rejected Pichierri's plea of guilty to simple assault. For this reason, rather than remanding for the court to decide whether to accept the plea, we will remand and direct specific performance of the plea agreement. The court on remand will be directed to accept the simple assault guilty plea nunc pro tunc to the plea hearing date of February 11, 2011, and sentence Pichierri under the resulting simple assault conviction.

In this particular case, the government did not provide any reason for its decision to withdraw from its plea agreement. Instead, the People's actions in this case are suspect at best. The People offered a plea to the defendant, inducing him to state under oath his guilt to what was viewed by the community as a heinous, race-motivated crime. Only after he did so, to the opprobrium of the public, and after the news of the plea deal had made headlines throughout the Territory and had become fodder for radio talk shows, the People rescinded the agreement without explanation. As one judge observed under somewhat similar circumstances in *United States v. Norris*, 486 F.3d 1045 (8th Cir. 2007), "The government reneged on its word. That omission is chargeable to the [Attorney General's Office] and threatens to make the word of that office not worth the paper on which it is written . . . . Whether in criminal or civil litigation, or otherwise in the practice of law, a lawyer's word ought to be his or her

bond." *Id.* at 1055 (Bright, J., dissenting). We believe those sentiments are applicable here.[13]

In coming to the conclusion to enforce the plea agreement in this case, we emphasize what the United States Supreme Court has recently noted: "[P]lea bargains have become . . . central to the administration of the criminal justice system."[14] *Missouri v. Frye*, 132 S. Ct. 1399, 1407, 182 L. Ed. 2d 379 (2012) (further noting that "the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant"). As was also noted in *Norris*, concerning plea agreements, " 'the courts' concerns run even wider than protection of the defendant's individual constitutional rights — to concerns for the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice.' " *Norris*, 486 F.3d at 1057 (Bye, J., dissenting) (quoting *United States v. Thompson*, 403 F.3d 1037, 1039 (8th Cir. 2005) (internal citation and quotation marks omitted)). Keeping these "concerns about honor, justice, and fundamental fairness paramount in our minds," we remand the case and direct the Superior Court to enforce the plea agreement. *Id.*

## III. CONCLUSION

We conclude that there was sufficient evidence to sustain Pichierri's conviction for simple assault. However, Pichierri is entitled to specific performance of his plea agreement, because he took the substantial step of standing in open court and entering a guilty plea under oath, thereby performing under that agreement in detrimental reliance upon the People's offer. Consequently, we will vacate the Judgment and Commitment, and remand the case for specific enforcement of the plea agreement.

---

[13] Our holding in this case depends upon the particular facts presented, and we do not reach the broader question of whether the government may ever withdraw from a plea agreement after a defendant has pleaded guilty on the record but before the plea has been accepted by the court.

[14] Indeed, as the United States Supreme Court noted in *Frye*, "Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas." *Frye*, 132 S. Ct. at 1407.